**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jan 31 2013, 9:17 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MARK EVERETT WATSON**
Watson Law Office
Terre Haute, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JONATHAN R. SICHTERMANN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOSEPH J. RHEUBOTTOM, JR., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 84A01-1205-CR-244 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE VIGO SUPERIOR COURT
The Honorable John T. Roach, Judge
Cause No. 84D01-1012-FB-4060

**January 31, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Joseph J. Rheubottom, Jr. pleaded guilty to one count of Neglect of a Dependent,[1] a class B felony, and appeals from the trial court's sentencing order for that conviction. Rheubottom raises the following issues for our review:

1. Did the trial court abuse its discretion when imposing Rheubottom's sentence?

2. Is Rheubottom's sentence inappropriate in light of the nature of the offense and the character of the offender?

We affirm.

In June of 2004, James Cliff moved in with his half-brother, Rheubottom, Rheubottom's wife, Melissa, and Rheubottom's step-son. Cliff, who was a paraplegic, required assistance for his care, including care for a few bed sores he had when he moved into Rheubottom's home. Initially, both Rheubottom and his wife were the primary caregivers for Cliff. When Rheubottom suffered a heart attack and took a disability leave of absence from his employment, Rheubottom became Cliff's primary caregiver while Melissa worked forty to fifty hours per week outside of the home to support the family.

During the nearly one and one-half years Rheubottom served as Cliff's primary caregiver, the existing sores worsened and he developed new ones. Rheubottom treated the sores with ointment and bandages, but over the course of several months they worsened to the point they became infected with sepsis, the flesh around the sores began to rot, and Cliff developed pneumonia. Underlying bone could be seen through some of the sores. On December 4, 2010, Rheubottom called 911 because Cliff had suffered a heart attack.

---

[1] Ind. Code Ann. § 35-46-1-4 (West, Westlaw current through 2012 2nd Reg. Sess.).

Although hospital personnel were able to revive Cliff from his cardiac arrest, he ultimately died.

Adult Protective Services and the coroner's office reported to authorities the nature and number of wounds that were observed on Cliff's body. The coroner noted that Cliff had multiple wounds on his body and that the infection from those wounds caused Cliff to contract pneumonia, which ultimately caused his death. The State charged Rheubottom with neglect of a dependent resulting in serious bodily injury and he pleaded guilty to the charge. The trial court held a sentencing hearing after accepting Rheubottom's guilty plea and sentenced him to the advisory term of ten years executed in the Department of Correction. Rheubottom now appeals from this sentence.

1.

Rheubottom contends that the trial court abused its discretion when sentencing him. In particular, he argues that that the trial court improperly weighed the aggravating and mitigating factors it found and ignored two mitigating factors, alternative forms of placement and the guilty plea, which he claims were clearly supported by the record.

Trial courts are required to enter sentencing statements whenever a sentence for a felony offense is imposed. *Anglemyer v. State*, 868 N.E.2d 482 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. That statement must include a reasonably detailed recitation of the reasons for imposing the particular sentence selected. *Id.* If there is a finding of aggravating and mitigating circumstances, the statement must identify all significant mitigating and

aggravating circumstances with an explanation of the characterization of the circumstances as either aggravating or mitigating. *Id*.

Sentencing decisions are reviewed only for an abuse of discretion except for the review and revise power provided for in Indiana Appellate Rule 7(B). *Id*. As long as the sentence is within the statutory range for the particular offense, we must determine only if there was an abuse of discretion. An abuse of discretion exists if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Id*.

Of the ways in which a trial court can abuse its discretion in sentencing, the examples relevant to our inquiry here include entering a sentencing statement that explains the reasons for imposing a sentence accompanied by the finding of aggravating and mitigating factors that are not supported by the record, entering a sentencing statement that omits reasons clearly supported by the record and advanced for consideration, or citing reasons that are improper as a matter of law. *Id*. We will remand the matter for resentencing if we cannot say with confidence that the trial court would have imposed the very same sentence had it considered the omitted reasons that are clearly supported by the record for sentencing. *Id*. A trial court cannot be said to have abused its discretion by improperly weighing aggravating and mitigating factors because the trial court no longer has an obligation to do so when sentencing a defendant. *Id*.

Rheubottom was sentenced for the commission of a class B felony offense. The sentencing range for a class B felony is a fixed term of between six years and twenty years

with an advisory sentence of ten years. Ind. Code Ann. § 35-50-2-5 (West, Westlaw current through 2012 2nd Reg. Sess.). Rheubottom was sentenced to a term of ten years executed in the Department of Correction, so his sentence clearly falls within the statutory range for the offense.

Although Rheubottom casts the first part of this argument as an improper weighing of aggravating and mitigating circumstances, he appears to argue that the trial court relied upon improper aggravating circumstances, which ultimately led to the imposition of the advisory sentence instead of a lesser sentence within the statutory range. When the trial court sentenced Rheubottom, it found the following aggravating circumstances: 1) The harm suffered by Cliff was greater than that necessary to establish the charged offense; 2) Rheubottom had a criminal history; and 3) Cliff was disabled. The trial court found the following mitigating circumstances: 1) The crime was unlikely to recur; 2) Rheubottom was genuinely remorseful; and 3) Rheubottom had lived a life free of crime for a period of time. The trial court explicitly rejected Rheubottom's tendered mitigating factor that Cliff had induced the injuries by requiring Rheubottom to promise not to place him in a nursing home or force him to seek medical treatment.

Rheubottom challenges the aggravating factor regarding the nature of the harm Cliff endured. Indiana Code Ann. § 35-38-1-7.1(a)(1) (West, Westlaw current through 2012 2nd Reg. Sess.) provides that it is appropriate for a trial court to consider as an aggravating circumstance that the harm suffered by the victim of the offense was significant and greater than the elements necessary to prove the commission of the offense. Indeed, case law

5

supports the consideration of the serious nature of a victim's injuries as a proper aggravator. *McCann v. State*, 749 N.E.2d 1116 (Ind. 2001). Rheubottom appears to argue that the trial court did nothing more than make a cursory reference to that aggravator without evidentiary support for the finding. We disagree.

While a material element of a crime may not be used as an aggravating factor to support an enhanced sentence, the trial court is permitted to evaluate the particularized circumstances of the elements as aggravating factors. *McElroy v. State*, 865 N.E.2d 584 (Ind. 2007). The following is a portion of the trial court's written sentencing order relevant to this issue:

> [Rheubottom] pled guilty to neglecting his [half-]brother, James Cliff, and causing serious bodily injury by his neglect. The evidence established that the victim was taken from defendant's home on December 3, 2010 in cardiac arrest. He was taken to the hospital where he was revived, but subsequently died after being taken off life support. The victim had extreme injuries in the form of pressure sores, according to the coroner, with some of them going through to the underlying bone. The death was listed as a homicide resulting from pneumonia and infections. While the court does not find the subsequent death of the victim to be an aggravating factor, there is evidence that the victim suffered under inhumane conditions, for a significant period of time, with wounds and ailments that progressively worsened over time. According to the coroner, Dr. Kohr, some of the wounds, shown in the autopsy photographs, would have progressed over several months, not merely days. . . .

*Appellant's Appendix* at 29. This sentencing statement more than adequately expresses the particularized nature of the circumstances of the offense and is more than a cursory reference to that statutory consideration.

Rheubottom further argues that the trial court impermissibly made reference to the state of the living conditions in his home with respect to that aggravating factor. The trial

court, in its oral statement at the close of the sentencing hearing made the following comments about the statutory aggravating factor and the living conditions:

> With respect to the statutory aggravating factor that the State wants me to find in terms of the harm, injury, loss [or] damage suffered by the victim. I'm finding that factor has been established, but probably for different reasons than took up the majority of the argument. I'm not finding the death itself is an aggravating factor. Unlike an aggravated Battery charge in which the risk of death is contemplated by the statute, I find that the charge here was the most serious charge, and I'm not going to punish you because death resulted. I'm also not convinced beyond a reasonable doubt that the death resulted from what bodily injury was proved to me by the evidence, however, I am allowed to take into consideration as an aggravating factor, the nature and circumstances of the offense. I found it significant that Doctor Kohr testified to an ongoing process, and that these wounds themselves would have been serious at one point, but they were made more serious by your neglect. The conditions that existed in that house are deplorable. They're inhuman. Most of us wouldn't allow our animals to live in such conditions. At some point you had a responsibility, and you didn't fulfill that responsibility, but it went beyond that. These circumstances were deplorable. I find that the injury and harm and loss suffered by your half brother was not only significant and greater than the necessary elements to prove the charge of serious bodily injury. At some point he did have serious bodily injury, and he continued that. So, I'm finding that as a statutory aggravating factor.

*Transcript* at 86-87. We disagree with Rheubottom's contention that the trial court's reference was improper or erroneous. The conditions of Rheubottom's home were relevant to the ongoing and worsening nature of Cliff's injuries and are particularized to the nature and circumstances of the offense.

Rheubottom also challenges the trial court's finding of his criminal history, which consists of a 1978 conviction for class B felony robbery, as an aggravating factor. A trial court is permitted to find as an aggravating circumstance the defendant's history of criminal or delinquent behavior. I.C. Ann. § 35-38-1-7.1(a)(2). Under the advisory sentencing

7

scheme, we no longer review the weight given to aggravating circumstances. *Anglemyer v. State*, 868 N.E.2d 482. Instead, we assess a defendant's criminal history as a measurement of the number of prior convictions and their gravity, their proximity or distance from the offense currently under review, and by any similarity or dissimilarity to the offense under review. *Bryant v. State*, 841 N.E.2d 1154 (Ind. 2006).

Although Rheubottom's prior conviction certainly is not minor, it is his only prior conviction. Furthermore, we acknowledge that it is not proximate or similar to the conviction currently under review. Nonetheless, our Supreme Court has held that a minor and non-related criminal history, although not a significant aggravating factor, is not an improper aggravator. *See Taylor v. State*, 840 N.E.2d 324, 341 (Ind. 2006) ("[w]hile Taylor's prior criminal history is a valid aggravating circumstance, it would not support a maximum sentence because the crimes were not particularly grave or related to his murder conviction."). The trial court did not abuse its discretion by finding this aggravating circumstance.

The trial court also found as an aggravating factor that Cliff was disabled. Rheubottom contends that the trial court improperly found his position of trust with Cliff as an aggravating factor, but the record reveals that the trial court mentioned that position of trust in the sentencing order as a factor differentiating the sentence imposed on Rheubottom's conviction from the sentence imposed on Melissa's conviction. *Appellant's Appendix* at 37-38. We conclude that the trial court did not abuse its discretion by finding Cliff's disability and infirmity as an aggravating factor especially since it is an enumerated statutory

8

consideration in sentencing. I.C. Ann. § 35-38-1-7.1(a)(7). It is undisputed that Cliff was required to use a wheelchair because he had almost no use of his legs.

Rheubottom also challenges the trial court's sentencing order on the ground that it overlooked the significant mitigating factors concerning alternative forms of placement and the guilty plea. A trial court can abuse its discretion in sentencing if it overlooks a mitigating factor that is supported by the record. *Anglemyer v. State*, 868 N.E.2d 482. When a defendant alleges that the trial court failed to identify or find a mitigating factor, the defendant bears the burden of establishing that the mitigating factor is supported by the record and is significant. *Id*. Rheubottom has failed to meet this burden.

It is true that a defendant who pleads guilty deserves some mitigating weight to be given to the plea in return. *Id*. Nonetheless, the significance of a guilty plea as a mitigating circumstance varies from case to case. *Id*. In this case, the trial court acknowledged Rheubottom's remorse to be genuine and explicitly found his remorse as a mitigating factor. On the other hand, the State possessed overwhelming admissible evidence of his guilt, making his decision to plead guilty a pragmatic one as well. Based on the record before us we remain unconvinced that his guilty plea was a significant mitigating circumstance. The trial court did not abuse its discretion by omitting a reference to the guilty plea when imposing Rheubottom's sentence.

The argument presented as a failure to find alternative placement options as a mitigating factor is more akin to a direct challenge of Rheubottom's placement in the Department of Correction. Review of this challenge is more appropriately conducted under

9

our Appellate Rule 7(B) analysis and is not subject to review for an abuse of discretion. *King v. State*, 894 N.E.2d 265 (Ind. Ct. App. 2008). Thus, we will consider this portion of Rheubottom's argument in that context.

2.

Article VII, sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of sentences through Appellate Rule 7(B), which provides that a court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Reid v. State*, 876 N.E.2d 1114, 1116 (Ind. 2007) (citing *Anglemyer*, 868 N.E.2d at 491). The defendant has the burden of persuading us that his sentence is inappropriate. *Id.*

With regard to Rheubottom's argument about alternative placement, we note that our review under App. R. 7(B) focusses on whether the sentence imposed is inappropriate, rather than whether another sentence is more appropriate. *King v. State*, 894 N.E.2d 265. The defendant must convince us that the placement ordered is inappropriate. *Id.* Rheubottom has failed to meet his burden here. Although he claims that the trial court erred, he fails to support that claim in a manner in compliance with App. R. 46(A)(8)(a) and the argument is waived. *Smith v. State*, 822 N.E.2d 193 (Ind. Ct. App. 2005). This rule requires the appellant to support his or her contentions with cogent reasoning with supporting citations to authorities, statutes, the appendix, or portions of the record.

Waiver notwithstanding, Rheubottom presented the argument to the trial court during the sentencing hearing that he wished to serve his sentence on home detention. The one person with whom Rheubottom could live testified that she could not afford to pay for the costs for the installation of the monitoring box or to keep her telephone functioning. The trial court noted that during the sentencing hearing that it was uncertain that Rheubottom, who was on a disability leave, could afford to pay for the costs related to home detention or had a place to stay. Consequently, Rheubottom has failed to meet his burden.

Regarding the nature of the offense, we observe that Cliff, who was physically disabled, sustained wounds such that it was evident he had suffered for an extended period of time. He suffered from malnutrition, dehydration, kidney failure, muscle wasting, poor wound healing resulting in the rotting away of his flesh and sepsis. We cannot say that the imposition of an advisory sentence was inappropriate on this basis.

Regarding the character of the offender, we observe that Rheubottom applied bandages and ointment to wounds that were severe enough that underlying bone was exposed in some places. Rheubottom attempted to justify his inaction by claiming that he was honoring his promise to his half-brother not to place him in a nursing home or force medical care upon him. The trial court flatly rejected this contention and we do as well.

The advisory sentence "is the starting point the Legislature has selected as an appropriate sentence for the crime committed." *Childress v. State*, 848 N.E.2d 1073, 1081 (Ind. 2006). That is precisely the sentence the trial court imposed here. Based upon our

review, we are unpersuaded that the sentence is inappropriate in light of the nature of the offense and the character of the offender.

Judgment affirmed.

NAJAM, J., and BRADFORD, J., concur.