Pursuant to Ind.Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before
any court except for the purpose of
establishing the defense of res judicata,
collateral estoppel, or the law of the case.



FILED

Jul 16 2013, 7:02 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**P. JEFFREY SCHLESINGER**
Crown Point, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

JEFFREY NEMCEK,                          )
                                         )
    Appellant-Defendant,             )
                                         )
      vs.                       )   No. 45A04-1210-CR-549
                                         )
STATE OF INDIANA,                        )
                                         )
    Appellee-Plaintiff.              )

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Thomas P. Stefaniak, Jr., Judge
Cause No. 45G04-1201-MR-1

**July 16, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

## Case Summary

During Jeffrey Nemcek's trial with a witness-separation order, the trial court allowed the State to recall a witness who had been released from his subpoena, remained in the courtroom, and heard testimony from another witness. Nemcek contends that the trial court abused its discretion in allowing the State to recall the witness after the violation of the witness-separation order. He also contends that the trial court abused its discretion in failing to consider certain mitigating factors and that his sentence is inappropriate in light of the nature of the offenses and his character. Finding that the trial court did not abuse its discretion in allowing the State to recall the witness or in failing to find certain mitigating factors, and that Nemcek's sentence is not inappropriate, we affirm.

## Facts and Procedural History

On November 23, 2011, Brandon Huseman was at home in Crown Point with his wife, Kristin, making shirts for the next morning's Thanksgiving "Turkey Trot" 5K run. Kristin's sister and her boyfriend came to the house around 8:00 p.m., and the four left to meet Kristin's cousins and another friend, Carroll Fairchild, at a bar on the downtown square around 11:00 p.m. Meanwhile, Nemcek met up with his friends at a bar on the downtown square around 11:00 p.m. as well. He had just gotten a new switchblade knife and was showing it to his friends at the bar.

After going to a few bars, Brandon and his friends decided to go home around 1:30 a.m. Fairchild was intoxicated, but the rest of the group was not. As the group began walking toward Kristin's aunt and uncle's house that was about a half-mile away,

Nemcek walked across the street toward the group, approached them, and said "looks like you need a D[esignated]D[river]." Tr. p. 222. Someone in Brandon's group responded, "No, looks like you need a DD." *Id.* Brandon and his friends continued to walk away, but Nemcek approached the group again, yelling with his arms in the air, "You got something to say to me?" *Id.* at 222-24. Brandon stepped forward to try to calm everyone down and said, "Guys, guys, we're not going to do this," and "we're not looking for a fight." *Id.* at 226, 355. Nemcek then grabbed his knife from his sweatshirt, rushed toward Brandon, took an uppercut swing, and stabbed Brandon in the abdomen three times. *Id.* at 227, 819. Brandon lifted up his shirt and said, "I think I just got stabbed . . . . Kris, I just got stabbed . . . . I'm gonna die." *Id.* at 229.

Brandon and his friends started to walk away, but Brandon had to lay down. Kristin and her cousin both called 911. Crown Point firefighter Dale Holsti responded to the scene. He noticed some of Brandon's fatty tissue on the sidewalk. *Id.* at 335-37. He then dressed Brandon's wounds, placed him on a stretcher, and transported him to St. Anthony's Hospital.

Meanwhile, Nemcek fled the scene, tossed his sweatshirt in a dumpster, threw his knife into a construction site, and hid in bushes on the square. *Id.* at 1659-60. Crown Point Police Department Officer Robert Ballas was dispatched to the square and was flagged down by someone who said that there was a frantic man hiding in the bushes. Nemcek fled again but was later arrested by Crown Point Police Department Officer Tommie Widener with blood on his hands and pants. Nemcek's sweatshirt and knife

3

were eventually recovered; the knife had a 3.5-inch retracting blade and a 5-inch handle. *Id.* at 1379.

At the hospital, Dr. Christopher Nervi arrived around 3:40 a.m. and noted that Brandon had a three-centimeter stab wound to the upper portion of his abdomen with fat sticking through and that he needed surgery. During surgery, when Dr. Nervi moved Brandon's liver to assess his injuries, his abdomen filled up with fresh blood. Dr. Nervi realized that Brandon had a major vascular injury and called for a second doctor to assist him. Dr. Nervi testified that this was one of the worst possible places to have an injury and that it was fatal. Brandon made it out of surgery but was pronounced dead at 8:00 a.m. Forensic Pathologist John Cavanaugh performed an autopsy the next day and noted a 1.25-inch stab wound beneath Brandon's sternum. There was a single external injury that went in multiple directions internally. Dr. Cavanaugh testified that the injuries were all from a common source and that Brandon died from the stab wound. *Id.* at 587, 615.

Crown Point Police Department Detective Robert Franko created a photographic array at the police station, and Kristin and two of her cousins identified Nemcek as the man who stabbed Brandon. The State charged him with murder, Class A felony voluntary manslaughter, and Class B misdemeanor possession of a knife with a blade that opens automatically.

A jury trial was held. At trial, Dr. Nervi testified and was released from his subpoena. He initially stayed in the courtroom for Dr. Cavanaugh's testimony. Nemcek then attempted to shift some of the blame for Brandon's internal injuries to Dr. Nervi and his performance of the surgery. When the State realized that Dr. Nervi might need to be

4

recalled as a witness as a result, it asked him to step out of the courtroom for the rest of Dr. Cavanaugh's testimony. After Dr. Cavanaugh's testimony, the State sought to recall Dr. Nervi and Nemcek objected. Dr. Nervi was questioned outside the presence of the jury about any potential prejudice from hearing Dr. Cavanaugh's testimony, and the trial court allowed him to testify again, stating that it "would be disingenuous to the entire process and not allow the fact finder to have a full, complete picture of all relevant evidence" were he not allowed to testify. *Id.* at 762. Dr. Nervi then testified that he did not cause the various internal injuries that were caused by the stab wound. *Id.* at 781-82.

The jury found Nemcek not guilty of murder and voluntary manslaughter, but guilty of the lesser-included offense of Class C felony reckless homicide as well as Class B misdemeanor possession of a knife with a blade that opens automatically. At sentencing, the trial court found as an aggravating factor telephone calls Nemcek made while in jail that "show a cold, callous side" and were "flat out cold-hearted and show[] an extreme disdain for what the family has gone through." *Id.* at 1910, 1912. Additional aggravating factors included the fact that Nemcek was out on bond at the time of the offense, his criminal history, and that prior leniency had failed. The trial court found the hardship to Nemcek's mother as a mitigating factor, while rejecting as mitigating factors his likelihood of not reoffending, provocation, alleged lack of criminal history, likelihood of responding to probation, remorse, and mental illness. *Id.* at 1910-13. The trial court sentenced Nemcek to 2865 days for reckless homicide and 180 days for possession of a knife with a blade that opens automatically, to be served consecutively, for an aggregate sentence of 3045 days, or just over eight years.

Nemcek now appeals.

## Discussion and Decision

Nemcek raises three issues on appeal, which we restate as: (1) whether the trial court abused its discretion when it allowed Dr. Nervi to testify a second time after the violation of a witness-separation order; (2) whether the trial court failed to consider certain mitigating factors; and (3) whether his sentence is inappropriate in light of the nature of the offenses and his character.

## I. Witness-Separation Order

Nemcek first contends that the trial court erred in allowing Dr. Nervi to testify a second time after he violated the witness-separation order. We disagree.

Separation of witnesses is governed by Indiana Evidence Rule 615, which says:

> At the request of a party, the court shall order witnesses excluded so that they cannot hear the testimony of or discuss testimony with other witnesses, and it may make the order on its own motion. This rule does not authorize the exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party that is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause.

The purpose of a witness-separation order is to prevent one witness's testimony from being influenced by another witness. *Corley v. State*, 663 N.E.2d 175, 176 (Ind. Ct. App. 1996). However, "[i]n the absence of connivance or collusion by the prosecutor, the court has discretion in allowing a witness to testify after the violation of a separation order. We will not disturb that exercise of discretion unless there is a showing of prejudice tantamount to an abuse of discretion." *Id.* (internal citations omitted).

In this case, Dr. Nervi testified about the surgery he performed on Brandon and was released from his subpoena. The trial court told Dr. Nervi he was "free to leave or stay, as you choose." Tr. p. 542. Dr. Nervi chose to stay, and Dr. Cavanaugh began his testimony. During cross-examination, Dr. Cavanaugh was asked whether Brandon's wounds could have been caused by Dr. Nervi during surgery. Dr. Cavanaugh stated that "the likelihood that this is caused by the surgeon is extremely low," and that there was a "negligible" chance that Brandon's liver injury was caused by Dr. Nervi. *Id.* at 709, 714-15. While Dr. Cavanaugh testified that it was unlikely that Dr. Nervi caused Brandon's internal injuries, the possibility was still raised, and Dr. Cavanaugh said that he "cannot rule out th[e] enlargement of a pre-existing injury," *id.* at 692, as a result of Dr. Nervi's operation.

As soon as the State realized that Dr. Nervi might need to testify again based on Dr. Cavanaugh's cross-examination, it asked him to step outside the courtroom so as not to hear any more witness testimony. When the State sought to recall Dr. Nervi, he was questioned outside the presence of the jury before he could testify again, and said that he would still answer truthfully and not alter his testimony based on any of the testimony he heard while in the courtroom. *Id.* at 749-50. As a result, the trial court ruled that Dr. Nervi could testify again, holding that "it would be disingenuous to the entire process and not allow the fact finder to have a full, complete picture of all relevant evidence" if Dr. Nervi were not allowed to testify again. *Id.* at 762.

Nemcek argues that the trial court abused its discretion in making this decision. However, we cannot say that there was any "prejudice tantamount to an abuse of

discretion" in allowing Dr. Nervi to testify a second time. While he had heard Dr. Cavanaugh's testimony, Dr. Nervi did not change his testimony about his actions during Brandon's surgery. When he testified the second time, he did not make any statement that contradicted what he said during his initial testimony, *see id.* at 492-542, 772-85, he just clarified that he would not have used a scalpel to examine internal organs, so he would not have caused Brandon's internal injuries. *Id.* at 781-82. Nemcek also contends that Dr. Nervi had incentive to change his testimony for fear of civil liability if his actions caused Brandon's death. However, Dr. Nervi testified that he had been concerned about potential civil liability "long before this trial ever came about" because "that possibility has existed from the moment that I became involved in this case." *Id.* at 752.

We therefore find that the prosecution did not engage in connivance or collusion, and Dr. Nervi's testimony was not affected by hearing Dr. Cavanaugh's testimony. The trial court did not abuse its discretion in allowing Dr. Nervi to testify again after he had violated the witness-separation order.

## II. Aggravating and Mitigating Factors

Nemcek also challenges the trial court's failure to consider that the victim of the crime facilitated the offense, Nemcek's past law-abiding life, and his remorse as mitigating factors. Sentencing decisions rest within the sound discretion of the trial court. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). So long as the sentence is within the statutory range, it is subject to review only for an abuse of discretion. *Id.* An abuse of discretion will be found where

8

the decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.*

A trial court may abuse its discretion in a number of ways, including: (1) failing to enter a sentencing statement at all; (2) entering a sentencing statement that includes aggravating and mitigating factors that are unsupported by the record; (3) entering a sentencing statement that omits reasons that are clearly supported by the record; or (4) entering a sentencing statement that includes reasons that are improper as a matter of law. *Id.* at 490-91. Because the trial court no longer has any obligation to weigh aggravating and mitigating factors against each other when imposing a sentence, a trial court cannot now be said to have abused its discretion in failing to properly weigh such factors. *Id.* at 491. If a trial court abuses its discretion, "remand for resentencing may be the appropriate remedy if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Id.*

Determining what is a proper mitigating circumstance is within the discretion of the trial court. *Rogers v. State*, 878 N.E.2d 269 (Ind. Ct. App. 2007), *trans. denied*. The trial court does not have to accept the defendant's arguments as to what the mitigating factors are, *id.*, and "[a]n allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record." *Carter v. State*, 711 N.E.2d 835, 838 (Ind. 1999).

Nemcek first argues that the trial court erred in not considering that Brandon induced or facilitated the offense as a mitigating factor. During sentencing, however, the trial court noted that "[o]ther people in Mr. Huseman's group, very likely acted in a different way than Mr. Huseman did," but that "Brandon Huseman, from all accounts of the evidence, had nothing to do with whatever occurred out there other than to put his hands up and say, 'Look, we're not doing this,' and tried to back the situation off." Tr. p. 1911. The record therefore does not clearly support the fact that Brandon induced or facilitated the offense, so the trial court did not err in failing to consider this as a mitigating factor.

Nemcek also contends that the trial court should have considered his past law-abiding life as a mitigating factor. However, at sentencing, the trial court noted that Nemcek "had a criminal mischief as a juvenile . . . [a]s an adult, the defendant was charged with a series of counts involving drug related charges which were ultimately dismissed, but he was convicted of reckless driving . . . ." *Id.* at 1914. The trial court also noted that Nemcek was on probation when he committed the current offense. *Id.* at 1914-15. The trial court therefore specifically addressed and rejected Nemcek's past criminal history as a mitigating factor, so there was no error.

Finally, Nemcek argues that the trial court erred in not considering his remorse to be a mitigating factor in sentencing. The trial court did note Nemcek's remorse; it stated "[b]efore the Court is a twenty-three year old male who expresses remorse at the podium and the Court also accepts his counsel's opinion that he expresses remorse in these jail recordings . . . ." *Id.* at 1909. However, the trial court also noted that Nemcek made

10

telephone calls from jail "that show a cold, callous side that is inconsistent with the demeanor shown here in court." *Id.* at 1910. In the phone calls to his mother and girlfriend, Nemcek said, "Everybody thought I was real upset. They're lucky I didn't look at the dad and give him a wink. And if they're there when I'm sentenced to probation, I'm gonna do that," *id.* at 1888, and, "When they tell me I'm getting out on probation, I'm gonna turn around smiling and give them a F'g wink." *Id.* "Substantial deference must be given to a trial court's evaluation of remorse," *Corralez v. State*, 815 N.E.2d 1023, 1025 (Ind. Ct. App. 2004), and based on the evidence, Nemcek has failed to show that the trial court abused its discretion in not considering his remorse to be a mitigating factor.

The trial court did not abuse its discretion in failing to consider that the victim of the crime facilitated the offense, Nemcek's past law-abiding life, and Nemcek's remorse as mitigating factors during sentencing.

### III. Inappropriate Sentence

Finally, Nemcek contends that his sentence of 3045 days is inappropriate in light of the nature of the offenses and his character and asks us to revise it to the advisory term of four years for a Class C felony. We disagree.

Although a trial court may have acted within its lawful discretion in imposing a sentence, Article 7, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of sentences through Indiana Appellate Rule 7(B), which provides that a court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is

11

inappropriate in light of the nature of the offense and the character of the offender." *Reid v. State*, 876 N.E.2d 1114, 1116 (Ind. 2007) (citing *Anglemyer*, 868 N.E.2d at 491). The defendant has the burden of persuading us that his sentence is inappropriate. *Id.* (citing *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006)).

Nemcek was convicted of Class C felony reckless homicide and Class B misdemeanor possession of a knife with a blade that opens automatically. The sentencing range for a Class C felony is two to eight years, with four years being the advisory term. Ind. Code § 35-50-2-6. For a Class B misdemeanor, a defendant shall receive no more than 180 days and no more than a $1000 fine. Ind. Code § 35-50-3-3. In this case, Nemcek received 2865 days—less than eight years—for his Class C felony conviction and 180 days for his Class B misdemeanor conviction. Both of these sentences are within the statutory guidelines.

Regarding the nature of the offenses, there is nothing in the record that indicates that these sentences are inappropriate. Nemcek brought an illegal switchblade knife with him out to the bars in Crown Point and got into an altercation with Brandon and his friends. When Brandon stepped forward with his hands up in an attempt to diffuse the tense situation, Nemcek pulled his switchblade from his sweatshirt and stabbed the unarmed Brandon multiple times. After the attack, Nemcek fled the scene and attempted to dispose of the evidence that linked him to the offense. The nature of these offenses is serious.

Regarding his character, Nemcek showed a "cold, callous side," when speaking about the offense from jail. Tr. p. 1910. He stated he was going to "turn around smiling

12

and give [Brandon's family] a F'g wink" when he received probation at sentencing, *id.* at 1888, dismissing the effect that his actions had on the victim's family. Nemcek also has a past criminal history, with a juvenile adjudication for criminal mischief and a reckless driving conviction as an adult. He also kicked a correctional officer at some point during his time in jail. *Id.* at 1912. Nemcek has not convinced us that his character warrants a reduction in his sentence.

After due consideration of the trial court's decision, we cannot say that Nemcek's sentence of 3045 days is inappropriate in light of the nature of the offenses and his character.

Affirmed.

KIRSCH, J., and PYLE, J., concur.