**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**KIMBERLY A. JACKSON**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CHAUNCEY KRANTZ, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 84A04-1302-CR-87 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE VIGO SUPERIOR COURT
The Honorable Michael J. Lewis, Judge
Cause No. 84D06-1202-FA-344

**January 16, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**DARDEN, Senior Judge**

Chauncey Isaac Krantz appeals his sixteen-year sentence for Class C felony child molesting, Class C felony child exploitation, and Class D felony possession of child pornography.  We affirm.

ISSUES

Krantz presents two issues: (1) whether the trial court abused its discretion in sentencing him; and (2) whether his sentence is inappropriate.

FACTS AND PROCEDURAL HISTORY

The Terre Haute Police Department received email messages from an Ohio man later identified as Dirk Gellert.[1]  The emails included several attachments containing transcripts of instant messages between Gellert and Krantz, who Gellert knew only as "sethisaacs86," about adult men having sex with children.  In the conversations, Krantz discussed how he and other men had engaged in sexual intercourse with young D.L., who Krantz portrayed as (and believes to be) his own biological daughter.  The discussions were graphic and described brutal and aggressive acts.  Krantz even pretended to be both D.L. and her mother, using his "sethisaacs86" account to have sexually explicit conversations with Gellert.  Krantz and Gellert planned to meet so Gellert could have sexual intercourse with D.L.  When interviewed by the police, Krantz admitted sending the instant messages but claimed none of them were true.

In addition to the instant messages, Gellert provided the police with photos Krantz had sent him.  Several showed D.L. partially nude; for example, in one photo, she wore

---

[1] Gellert is also identified in the record as "Dirk Gellar."

only her underwear. Initially, when interviewed by the police, Krantz denied taking any pictures of D.L. It was not until the police showed him the photos that he admitted secretly taking them.

The police recovered several other photos that had been deleted from Krantz's cell phone. Some depicted children engaging in sexual activity, including one titled "twelve year old fornicates with a six year old." Pre-Trial Tr. p. 74. Others depicted the sexual organs of people who police believed to be children, although the photos did not display the subjects' faces or other indication of their ages. Their captions, however, indicated they were depictions of D.L. and other minors before, during, and after sexual intercourse. Krantz admitted he had these photos on his cell phone. However, he claimed the ones with D.L.'s name in the caption were really not images of her, but instead photos that he had merely received, titled, and sent out.

During a forensic interview at the Child Advocacy Center, D.L. disclosed that Krantz had "raped" her starting when she was six years old. Appellant's App. p. 190. She also stated that Krantz would make her touch his penis with her mouth, hands, and vaginal area. She said that "white stuff" would come out of his "pee pee" when he would rub his "pee pee" on her "pee pee." *Id.* She further stated that "he would put the white stuff in her pee pee and it would run out of her and he would then take pictures of it coming out of her." *Id.*

The State charged Krantz with two counts of Class A felony child molesting, one count of Class C felony child exploitation, and one count of Class D felony possession of child pornography. Pursuant to a plea agreement, Krantz pleaded guilty to a lesser charge

3

of Class C felony child molesting as well as Class C felony child exploitation and Class D felony possession of child pornography. The State agreed to dismiss the remaining Class A felony child molesting charge. The plea agreement left sentencing to the discretion of the trial court.

While in jail, Krantz was recorded during a phone call to his mother in which he expressed anger that jail staff had taken away a bracelet D.L. had given him. He complained that authorities were "[t]aking away remnants of [D.L.]" and warned that he was going to grab a staff member and fight "[t]o the death." Sent. Tr. pp. 30, 33.

During preparation of his presentence investigation report, Krantz told the probation officer that accusations he had molested D.L. were false and that D.L. had recanted her accounts of being molested by him. In addition, he blamed Gellert for his convictions and minimized his own culpability for the crimes.

Prior to sentencing, Krantz never petitioned the trial court to withdraw his guilty plea due to his innocence. At his sentencing hearing, the trial court found his minimal criminal history to be the only mitigating circumstance as he had only one prior conviction for resisting law enforcement. As for aggravating circumstances, the trial court identified: (1) D.L.'s young age, noting she was between five and nine years old at the time of the offenses; (2) Krantz's position of trust with D.L.; (3) Krantz's lack of remorse; (4) the emotional and psychological effects of the crimes on D.L.; and (5) that Krantz would not respond to short-term jail incarceration. Finding that the aggravators significantly outweighed the single mitigator, the trial court imposed consecutive eight-year terms for the Class C felony child molesting and Class C felony child exploitation

4

convictions and a concurrent three-year term for the Class D felony possession of child pornography conviction, for an aggregate sentence of sixteen years. Krantz now appeals his sentence.

## DISCUSSION AND DECISION

### I. ABUSE OF DISCRETION

Krantz contends the trial court abused its discretion in sentencing him. Subject to the review and revision power discussed below, sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (2007). An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* A trial court abuses its discretion when it: (1) fails to enter a sentencing statement; (2) enters a sentencing statement that includes reasons that are unsupported by the record; (3) enters a sentencing statement that omits reasons that are clearly supported by the record and advanced for consideration; or (4) enters a sentencing statement that includes reasons that are improper as a matter of law. *Id.* at 490-91. If a trial court abuses its discretion in sentencing, "remand for resentencing may be the appropriate remedy if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Id.* at 491.

Krantz challenges several aggravators found by the trial court and claims it overlooked or should have found several other mitigating factors. Specifically, he argues

the court improperly found his position of trust with D.L., his lack of remorse, that he would not respond to short-term incarceration, and the effects of his crimes on D.L. as aggravators. He also argues the court failed to find his guilty plea, his cooperation with police, and his difficult childhood as mitigators.

Position of trust. Krantz argues the record does not support the trial court's finding of his position of trust with D.L. as an aggravator. The record is clear, however, that Krantz believed he was D.L.'s biological father and held himself out to be her father. *See, e.g.*, Appellant's App. p. 163 (presentence investigation report reflects Krantz told probation officer that D.L. was his biological child and that he maintained contact with D.L.'s mother only for D.L.'s benefit); Sent. Tr. pp. 38 (Krantz stated in the jail phone call that "they better not try and take anything else away from me, of my child"), 82 (Krantz's mother testifying that "he's thought for years that [D.L.] was his biological child").

Krantz nonetheless claims two of the court's statements show it rejected his paternity claim. First, in finding Krantz's position of trust to be an aggravator, it stated:

> The position of trust you're in. You claim to be this child's father or acting as this child's father, when there's actually no documentation of you having any children. Other than you testifying on the stand. The position of trust, huge position of trust. Being a father of daughters myself, I would never, I, handcuff me now if I do something like that.

Sent. Tr. pp. 115-16. We take this statement as a mere observation that although Krantz provided the only evidence that he was D.L.'s father, it was sufficient to support that he had believed and acted as a father and subsequently violated his position of trust. Second, when the court rejected his proffered mitigator that incarceration would cause

6

undue hardship to his dependents, it stated: "No child is your legal dependent." *Id.* at 117. This statement simply explains that incarceration could not cause undue hardship on any legal dependents since he had none. It says nothing about Krantz's position of trust. It is undeniable that a court may find that a defendant held a position of trust with the victim without finding that the victim was the defendant's legal dependent. The trial court did not abuse its discretion by finding Krantz's violation of a position of trust as an aggravator.

Lack of remorse. Krantz next argues the record does not support the trial court's finding of his lack of remorse as an aggravator. In finding this aggravator, it stated:

> I read the pre-sentence report. I didn't see any remorse in the pre-sentence report. The only time I heard you was up on the stand say, "I'm sorry, I'm sorry. I'd tell her if she was here, I'm sorry." Well she's ten now, how can she understand, I don't know if she would understand your remorse.

*Id.* at 116.

The presentence investigation report states the following:

> During this Probation officer[']s interview with Krantz, he denied all charges that he molested [D.L.] and stated that charges were going to be dropped since his daughter "Recanted" her accounts of being molested by him. The Defendant blamed "Dirk[,"] his Ohio chat-line friend, for making him use his daughter[']s middle name . . . in chat messaging between the two which triggered the investigation which ultimately came to this instant offense. He explained that he would have never been charged with Child Exploitation if he had not used [D.L.'s] middle name . . . when chatting with "Dirk[."]
> According to Krantz, the only thing that he did wrong was having pictures of naked children on his cell phone. He maintains that "Dirk" would send the pictures to him even though he had no interest in looking at them.

7

Appellant's App. p. 166. Thus, having already pleaded guilty to Class C felony child molesting of D.L., Krantz then told the probation officer that he denied all molesting charges and that D.L. had recanted. Krantz stated at the sentencing hearing that he meant he denied only the original Class A felony charges, but given his complete denial of any molesting charges during the presentence investigation, the court was within its discretion to disbelieve his claim at the sentencing hearing.

Krantz also claims the probation officer inaccurately recorded his response and points to several other inaccuracies in the report to support this claim. However, the probation officer testified at the sentencing hearing. The officer admitted some mistakes (his notation of Krantz's social security number, birthplace, and marital status) but testified that everything else accurately recorded what Krantz told him. For example, contrary to Krantz's claims at the sentencing hearing, the probation officer testified that Krantz told him he was a regular user of an adult online chat service and that he had been with two hundred men. Given the presentence investigation report and the probation officer's testimony, the court could reasonably conclude that the officer had accurately recorded Krantz's denial of all the molesting charges, which reflected upon Krantz's credibility with the trial court.

Krantz further faults the trial court's observation that D.L. would unlikely understand his remorse. We agree that a court may find remorse even if the victim does not understand that remorse; however, we take the court's overall statement to be that the lack of remorse shown by the presentence investigation report outweighed his single equivocal statement of remorse at the sentencing hearing.

The presentence investigation report reflects that Krantz denied ever molesting D.L., claimed D.L. had recanted, blamed Gellert for getting him caught and convicted, and blamed Gellert for sending him photos he was not interested in (a claim contradicted by his statement to police that he received explicit photos, titled them, and sent them back out). The court was well within its discretion in finding his lack of remorse as an aggravator.

Short-term incarceration. Krantz also argues the record does not support the trial court's finding that he would not respond to short-term incarceration as an aggravator. The record shows Krantz admitted having sexually explicit conversations with Gellert for a period spanning at least two years, and during that time, Gellert sent him photographs of children engaging in sex acts. D.L.'s forensic interview indicated that his sexual abuse of her was ongoing and that he took both photo and video images of her. This evidence shows that Krantz's offenses were the result of a prolonged pattern of conduct and not merely a one-time lapse of judgment.

Moreover, in his jail phone call to his mother, Krantz threatened violence to jail staff after a bracelet D.L. had given him was taken away. In that same conversation, he expressed an inability to come to terms with the fact that he was to have no contact with D.L. *See* Sent. Tr. pp. 34 ("You tell them not to take my child away from me like that. . . . They can't do that."), 40 ("[T]hey're trying to take me away from [D.L.] for the rest of my life."). In addition, his Indiana Risk Assessment System score shows he is at high risk of reoffending. The record amply supports a reasonable belief that Krantz would not

respond to short-term incarceration, and thus the trial court did not abuse its discretion in finding this aggravator.

Victim impact. Krantz further argues that the emotional and psychological effects of the crimes on D.L. were not a valid aggravating circumstance. It is settled law that victim impact is an improper aggravator where there is nothing in the record to indicate that the impact on the victim was different than the impact generally experienced by victims of the same crime. *McElroy v. State*, 865 N.E.2d 584, 590 (Ind. 2007). The principal evidence regarding the emotional and psychological effects of the crimes on D.L. came from her mental health counselor's testimony at the sentencing hearing. The counselor testified that D.L. had experienced problems at school and difficulties with fear, nightmares, anger, trusting people, and making friends. She also stated that D.L. would likely need long-term treatment. However, she also acknowledged that D.L.'s issues were common to children who had been molested, and like them, she would probably suffer the effects for a good part of her life. This evidence does not reveal destructive effects not normally experienced by victims of such crimes. While we recognize the terrible effects Krantz's abuse has had on D.L., we are compelled to conclude the court abused its discretion by finding victim impact as an aggravator.

Guilty plea. As to Krantz's claims regarding mitigators, his main contention is that the court should have found his guilty plea to be a mitigator. A defendant who pleads guilty deserves some mitigating weight to be afforded to the plea. *Anglemyer*, 875 N.E.2d at 220. However, a trial court does not necessarily abuse its discretion by failing to recognize a defendant's guilty plea as a significant mitigating circumstance. *See id.* at

10

220-21. A guilty plea does not rise to the level of significant mitigation where the defendant has received a substantial benefit from the plea or where the evidence against the defendant is such that the decision to plead guilty is more likely the result of pragmatism than acceptance of responsibility and remorse. *See id.* at 221.

Krantz was charged with two counts of Class A felony child molesting (which carried a sentencing range of twenty to fifty years on each count), one count of Class C felony child exploitation, and one count of Class D felony possession of child pornography. Pursuant to the plea agreement, the State agreed to allow him to plead to a lesser charge of Class C felony child molesting (along with the child exploitation and possession of child pornography charges) and dismissed the second Class A felony child molesting charge. The reduction of one Class A felony to a Class C felony and the dismissal of the other Class A felony shows a substantial benefit received by Krantz.

Krantz nonetheless argues that the reduction and dismissal were merely in conformance with the evidence against him. He claims D.L.'s use of the word "rape" really indicated nothing more than fondling, thus supporting child molesting only as a Class C felony (fondling or touching) and not a Class A felony (sexual intercourse or deviate sexual conduct). *See* Ind. Code § 35-42-4-3 (2007). While it is certainly true that D.L. recounted several incidents of fondling, she also stated that Krantz had "raped" her starting when she was six years old, that he would make her touch his penis with her mouth and vaginal area, and that "he would put the white stuff in her pee pee and it would run out of her and he would then take pictures of it coming out of her."

11

Appellant's App. p. 190. This evidence is sufficient for a trier of fact to consider in support of two counts of Class A felony child molesting as charged by the State.

Had Krantz been convicted of these two Class A felonies alone, he could have faced a potential sentence of up to one hundred years. *See* Ind. Code § 35-50-2-4 (2005) (maximum sentence for Class A felony is fifty years). Instead, the plea agreement allowed him to significantly limit his sentencing exposure for child molesting to just eight years. *See* Ind. Code § 35-50-2-6(a) (2005) (maximum sentence for Class C felony is eight years). Krantz thus received a substantial benefit from his guilty plea. The court therefore did not abuse its discretion by failing to find that his guilty plea rose to the level of a significant mitigator.[2]

Cooperation with police. Krantz also argues the court should have found his cooperation with police to be a mitigator. However, a trial court is not obligated to accept the defendant's contentions as to what constitutes a mitigating circumstance. *McCann v. State*, 749 N.E.2d 1116, 1121 (Ind. 2001). Here, Krantz was initially dishonest with police and denied taking any photos of D.L. It was not until he learned that the police were already in possession of the photos that he admitted taking them. Further, he initially denied D.L.'s allegations and claimed he had not touched her inappropriately in any way. Appellant's App. p. 182. In light of these dishonest

---

[2] Krantz claims the dismissed Class A felony charge "appears to" refer to a specific motel room incident that could only have supported a Class C felony charge. Appellant's Br. p. 16. However, he points to nothing in the record from which we can conclusively determine that the dismissed charge referred to this incident. In any event, the State's reduction of the first Class A felony to a Class C felony was a substantial benefit in itself to warrant the trial court's rejection of his guilty plea as a significant mitigator.

12

statements, the trial court did not abuse its discretion by omitting any cooperation with the police as a mitigator.

Difficult childhood. Krantz further argues the court should have found his difficult childhood to be a mitigator. He points to his own testimony as well as his mother's indicating that he was sexually abused as a child.

The trial court explicitly rejected mental illness (which, Krantz's testimony shows, was related to his difficult childhood) as a mitigator. It did not, however, explicitly reject his difficult childhood as a mitigator. Nonetheless, if a trial court does not find the existence of a mitigating factor after it has been argued by counsel, it is not obligated to explain why it has found that the factor does not exist. *Anglemyer*, 868 N.E.2d at 493.

Here, portions of the sentencing statement show the court clearly considered the testimony regarding his difficult childhood. *See* Sent. Tr. pp. 116 ("You said you have nightmares from the things that happened to you as a child. Well, you've turned your nightmares into her nightmares."); 117 (noting absence of medical evidence verifying violent childhood sexual abuse alleged by Krantz); 118 ("You[r] problems became her problems and you put them on her."). It is therefore apparent the court found that his difficult childhood was not a significant mitigator. We conclude this decision was not an abuse of its discretion. *See Anglemyer*, 868 N.E.2d at 493 ("It is apparent to us that rather than overlooking Anglemyer's mental illness, the trial court determined it was not significant and thus would not be a factor influencing the trial court's sentencing decision. This was the trial court's call. We find no error.").

13

In sum, the trial court did not abuse its discretion by finding Krantz's minimal criminal history to be the only mitigator. And although the court abused its discretion by identifying victim impact as an aggravator, it properly found his position of trust, his lack of remorse, and that he would not respond to short-term incarceration as aggravators. Furthermore, the evidence supports the conclusion that these incidents occurred over a significant period of time. Given that the aggravators also included D.L.'s young age, which was not challenged by Krantz, we are confident that the trial court would have imposed the same sentence had it not relied on victim impact as an aggravator.

## II. INAPPROPRIATE SENTENCE

Krantz also contends his sentence is inappropriate. Although the trial court may have acted within its lawful discretion in imposing Krantz's sentence, Article 7, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of sentences through Indiana Appellate Rule 7(B), which provides that a court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Reid v. State*, 876 N.E.2d 1114, 1116 (Ind. 2007) (citing *Anglemyer*, 868 N.E.2d at 491). The defendant has the burden of persuading us that his sentence is inappropriate. *Id.*

We first look to the statutory sentencing ranges established for the classes of the offenses. Krantz pleaded guilty to two Class C felonies and one Class D felony. The statutory sentencing range for a Class C felony is between two and eight years, with the advisory sentence being four years. Ind. Code § 35-50-2-6(a). The statutory sentencing

14

range for a Class D felony is between six months and three years, with the advisory sentence being one and a half years. Ind. Code § 35-50-2-7(a) (2005). Krantz was sentenced to maximum terms, with the Class C felonies to be served consecutively to each other and the Class D felony to be served concurrently with the other sentences, for an aggregate sentence of sixteen years.

We next look to the nature of the offenses and Krantz's character. As to the nature of the offenses, Krantz sexually victimized young D.L., who he believed to be his own biological daughter and held out to be his daughter to others, when she was between five and nine years old. There is evidence in the record that he forced D.L. to touch his penis, and he also rubbed his penis against her vagina. Further, Krantz took pictures of his semen running out of D.L.'s vagina. In addition, he sent instant messages describing in excruciating detail the aggressive and brutal sexual abuse he and other men perpetrated upon D.L. He also secretly took and disseminated photos of D.L. in a partially nude state. Lastly, the police were able to recover several deleted photos constituting child pornography on Krantz's cell phone, including one titled "twelve year old fornicates with a six year old." Pre-Trial Tr. p. 74. The nature of the offenses alone justifies his sixteen-year sentence.

As to his character, the record reveals that Krantz's victimization of D.L. was not a mere lapse in judgment but instead a pattern of behavior exhibiting a willingness to abuse and exploit his young biological daughter over several years for his own personal gratification. Moreover, we agree with the trial court that, despite his guilty plea, the record shows his unwillingness to accept responsibility for his conduct: he denied ever

molesting D.L., claimed she had recanted, and blamed his conduct on his online chat friend Gellert, which reflected upon his credibility with the trial court. Krantz's poor character is further shown by the phone call recorded at the jail. There, he threatened to fight jail staff "[t]o the death" in retribution for taking away a bracelet from D.L. Sent. Tr. p. 33. The phone call reflects a continued fixation on D.L. and an inability to understand that he is to have no contact with her.

Krantz nonetheless asks us to consider his undocumented physical ailments and points to his testimony at the sentencing hearing recounting his physical health issues. We acknowledge, as did the trial court, that Krantz lost a significant amount of weight between his arrest and sentencing. Nonetheless, other than his own self-serving testimony, he provided no evidence that he would not receive the medical care he needs at the Department of Correction.

Krantz also claims that the sexual abuse he suffered as a child in some way redeems his character. Even assuming the truth of this claim, however, it simply does not excuse his conduct or his character.

Krantz has failed to persuade us that his sixteen-year sentence is inappropriate in light of the nature of his offenses and his character. Also, the trial court exercised its discretion by sentencing Krantz to less than the maximum sentence that he could have received.

## CONCLUSION

We therefore affirm Krantz's sentence.

KIRSCH, J., and PYLE, J., concur.