ATTORNEY FOR APPELLANT
John T. Wilson
Anderson, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# In the
# Indiana Supreme Court

_____

No. 48S04-0711-CR-552

AARON REID,

        *Appellant (Defendant Below),*

v.

STATE OF INDIANA,

        *Appellee (Plaintiff Below).*

_____

Appeal from the Madison Superior Court, No. 48D03-0601-FA-23
The Honorable Thomas Newman, Jr., Judge

_____

On Petition To Transfer from the Indiana Court of Appeals, No. 48A04-0605-CR-00280

_____

**November 28, 2007**

**Shepard, Chief Justice.**

Appellant Aaron Reid, convicted of conspiracy to commit murder after collaborating with a police informant and an undercover officer, argues that his sentence is inappropriate. We revise his sentence from the fifty-year maximum imposed by the trial court to the thirty-year advisory sentence.

**Facts and Procedural History**

Aaron Reid was incarcerated in the Madison County Jail during January 2006 when he and inmate Jerry Johnson began discussing Reid's desire to have his wife and mother-in-law killed. Johnson told Reid that he knew someone, Jay Thompson, who would kill them.

Unbeknownst to Reid, Johnson contacted Detective David Callahan and told him of the discussions. Thereafter, Johnson pretended to make phone calls to Thompson while Reid was present, stating where Reid's wife lived, when she would be home, and the manner in which Reid wanted her killed. Detective Callahan intercepted a letter Reid sent to Thompson and arranged a phone call in which Callahan, pretending to be Thompson, spoke with Reid. During the conversation, the officer asked whether Reid wanted his wife killed. Reid responded by saying, "I want everything taken care of," and "[t]here's only two (2) people, the mother and a daughter and that's it." (Tr. at 257, 267-68.)

On January 7, 2006, Detective Mike Howell, posing as Thompson, met with Reid at the jail. When Howell asked whether Reid wanted them "D-E-A-D," Reid made a slashing motion across his throat. (Id. at 284-85.)

On January 9, 2006, Callahan met with Reid at the Madison County Sheriff's Department. During that meeting and a subsequent meeting initiated by Reid, Reid waived his Miranda rights, admitted that he had written a letter to and spoken with someone he believed was Thompson, told Callahan the plan was a joke, and told Callahan that it was Johnson's idea. In a third meeting on January 20, 2006, Reid gave a videotaped statement in which he admitted he wanted his mother-in-law killed, but claimed he did not want his wife harmed.

The State charged Reid with conspiracy to commit murder, a class A felony.[1] At his sentencing hearing, both Reid's wife and mother-in-law acknowledged awareness of Reid's mental disorders and urged the trial court to give Reid the minimum sentence. (Tr. at 437, 440-42, 449.) In its sentencing order, the trial court identified Reid's criminal history and the fact he

---

[1] Ind. Code Ann. § 35-41-5-2 (West 2007).

was on probation at the time of the offense as aggravating circumstances. The court found the wife's and mother-in-law's statements and the fact Reid was on medication to be mitigating circumstances. It sentenced Reid to the maximum, fifty years executed.

On appeal, Reid argues that his sentence was inappropriate. The Court of Appeals affirmed his sentence. Reid v. State, 868 N.E.2d 71 (Ind. Ct. App. 2007). We grant transfer.[2]

## Reasonableness of Sentence

Reid contends that the trial court's imposition of the fifty-year maximum sentence was inappropriate under Indiana Appellate Rule 7(B).

Although a trial court may have acted within its lawful discretion in determining a sentence, Article VII, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of a sentence through Indiana Appellate Rule 7(B), which provides that a court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Anglemyer v. State, 868 N.E.2d 482, 491 (Ind. 2007). The burden is on the defendant to persuade us that his sentence is inappropriate. Childress v. State, 848 N.E.2d 1073 (Ind. 2006). Reid has met this burden. We conclude that his sentence is inappropriate.

The maximum possible sentences are generally most appropriate for the worst offenders. Reid's offense was a class A felony, for which the sentence range is twenty to fifty years, the advisory sentence being thirty. Ind. Code Ann. § 35-50-2-4 (West 2007). Here, Reid received the maximum, despite the fact that neither of his victims was actually placed in danger and, more importantly, despite his victims' wishes that he not receive any incarceration. Certainly, if the

---

[2] Reid also argues there was insufficient evidence to establish that he entered into an agreement to have his wife and mother-in-law murdered or to establish that he engaged in an overt act in furtherance of that agreement. The Court of Appeals correctly addressed his contentions about sufficiency of the evidence, and, on those points, we summarily affirm. See Ind. Appellate Rule 58(A).

circumstances had been as Reid perceived them, his victims would have been in danger. Yet, whether Reid actually had the ability to orchestrate such a scheme absent the encouragement of a fellow inmate, who had an upcoming sentencing hearing and was working undercover with police officers, is open to doubt.

At the time of Reid's trial, he was twenty-two years old. He has had mental health problems since he was a child and has been on medication all of his life. (Tr. at 443-44.) Reid has been diagnosed with attention deficit hyperactivity disorder, anxiety disorder, conduct disorder, borderline intellectual disorder, bi-polar disorder, and post-traumatic stress disorder, according to the pre-sentence investigation report. (App. at 17-18.) He was placed in Ball Memorial Hospital's Psychiatric Unit in 2005. (Id. at 18.) He has amassed a lengthy criminal history, but many of these offenses were either misdemeanors, occurred while he was a juvenile, or did not result in any physical injuries. (Id. at 14-15.)

Inmate Johnson testified that he did not prompt the conversations with Reid or "ask [Reid] to kill his wife," but he admitted to previously "snitching" on three other prison inmates, who all coincidentally chose to confide in him. (Tr. at 220-23.) Johnson also testified that the phone calls, letters, contents of the letters, and "[w]hat was needed" for the killings were his ideas, rather than Reid's. (Id. at 221.) Johnson faced a sentencing hearing only a few days after Reid's trial, during which the sentencing was open to the court's discretion; he had been convicted of seven crimes of dishonesty in the previous eight years. (Id. at 223-24.)

Obviously, many police informants will have dubious backgrounds, and it is hardly unknown that opportunistic detainees persuade fellow inmates to agree to crimes that otherwise would have gone unexecuted, in hopes of gleaning the prosecutor's leniency. Reid's mental health problems may have made him an easy target for such a plan. Johnson even testified that Reid knew Johnson gave information to police detectives, but that Reid nonetheless chose to confide in him, providing some insight into Reid's competence to orchestrate an assassination plan of his own volition. (Id. at 224.)

Johnson's role in the conspiracy hardly exonerates Reid from guilt. If the facts had really been as Reid perceived them, his wife and mother-in-law would have been murdered. Still, considering all the circumstances, we cannot say that Reid is one of the worst offenders deserving of the maximum sentence. Given that no one was injured, both potential victims pleaded for leniency, and Reid had a history of mental health problems, it is inappropriate to order twenty-two year old Reid to serve fifty years. The advisory sentence of thirty years is more appropriate.

**Conclusion**

We direct the trial court to enter a sentence of thirty years executed time in the Indiana Department of Correction.

Dickson, Sullivan, Boehm, and Rucker, JJ., concur.