**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MARCE GONZALEZ, JR.**
Dyer, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MELISSA RAMOS JOHNSON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 45A03-1203-CR-138 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Thomas P. Stefaniak, Jr., Judge
Cause No. 45G04-1004-FB-42

**October 4, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Melissa Ramos Johnson ("Johnson") pled guilty to Aggravated Battery[1] and Neglect of a Dependent[2], each as Class B felonies. She now appeals, raising for our review only whether her sentence is inappropriate under Appellate Rule 7(B).

We affirm.

**Facts and Procedural History**

On April 21, 2010, Johnson was at home with her son, E.J. On that day, Johnson struck E.J. numerous times throughout the day. This included hitting E.J. in the face, which caused him to fall and hit his head on a coffee table. Johnson also slapped E.J. numerous times on the buttocks with a house shoe.

At some point during the day, E.J. fell asleep. Johnson checked on E.J. and found him stiff and unresponsive. Johnson brought E.J. to St. Catherine's Hospital in East Chicago. E.J. was found to have severe head injuries as well as scratches to his face and bruising on his body, and was transferred to University of Chicago's Comer Children's Hospital in Chicago, Illinois.

E.J. was placed on life support. Doctors were unsure whether he would survive if the life-support machines were disconnected, but E.J. ultimately did survive and was transferred to another hospital for long-term rehabilitation services. However, E.J. was diagnosed with permanent brain damage and other disorders.

---

[1] Ind. Code § 35-42-2-1.5.

[2] I.C. § 35-46-1-4(a) & (b)(2).

On April 26, 2010, the State charged Johnson with Battery, as a Class B felony[3]; Aggravated Battery, as a Class B felony; Neglect of a Dependent, as a Class B felony; Battery, as a Class C felony; Neglect of a Defendant, as a Class C felony; Battery, as a Class D felony; and Neglect of a Defendant, as a Class D felony. On June 7, 2010, the State entered an amended charging information, which added several charges of Neglect of a Dependent as Class B, C, and D felonies; one additional charge for Battery, as a Class D felony; and a charge for False Informing, as a Class B misdemeanor.[4]

On September 23, 2011, Johnson and the State entered into a plea agreement and stipulated factual basis, pursuant to which Johnson agreed to plead guilty to one count each of Aggravated Battery and Neglect of a Dependent, each as Class B felonies. In exchange, the State agreed to dismiss all remaining charges. Johnson and the State agreed to the entry of concurrent sentences on the two remaining counts, but otherwise left sentencing decisions to the trial court. The trial court accepted the plea agreement and entered judgments of conviction the same day.

On February 24, 2012, a sentencing hearing was conducted. At the hearing's conclusion, the trial court sentenced Johnson to eighteen years imprisonment with one year suspended to probation for each offense, with the sentences to run concurrently.

This appeal followed.

**Discussion and Decision**

---

[3] I.C. § 35-42-2-1(a)(4).

[4] I.C. § 35-44-2-2 (repealed and replaced by I.C. § 35-44.1-2.3 (2012)).

Johnson raises for our review whether her sentences are inappropriate under Appellate Rule 7(B). Johnson points to her psychiatric diagnoses as warranting a reduction in her sentences.

In Reid v. State, the Indiana Supreme Court reiterated the standard by which our state appellate courts independently review criminal sentences:

> Although a trial court may have acted within its lawful discretion in determining a sentence, Article VII, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of a sentence through Indiana Appellate Rule 7(B), which provides that a court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender. The burden is on the defendant to persuade us that his sentence is inappropriate.

876 N.E.2d 1114, 1116 (Ind. 2007) (internal quotation and citations omitted).

Our supreme court has stated that "sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." Cardwell v. State, 895 N.E.2d 1219, 1222 (Ind. 2008). Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented. See id. at 1224. One purpose of appellate review is to attempt to "leaven the outliers." Id. at 1225. "Whether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." Id. at 1224.

Here, Johnson pled guilty to Aggravated Battery and Neglect of a Dependent, each as Class B felonies. The sentencing range for each of these offenses runs from six to twenty years, with an advisory term of ten years. I.C. § 35-50-2-5. Johnson was sentenced to two

concurrent terms of eighteen years imprisonment, with one year of each term suspended to probation. She now asks that we revise her sentence to two executed terms of fourteen years, or alternatively to executed terms of eighteen years with four years of each suspended to probation.

Johnson's offenses warrant aggravated sentences, and she concedes as much. Over a period of time on April 21, 2010, she struck E.J. multiple times, causing scratches and bruising on his face, limbs, body, and groin. She struck E.J.'s face hard enough to cause him to fall and hit his head against a coffee table. Even after this, Johnson delayed seeking medical attention until E.J. had become stiff and unresponsive.

As a result of this abuse, E.J., who was two years old at the time, suffered a right side subdural hematoma, severe cerebral edema, diffuse hypoxic injury, retinal hemorrhages, and multiple bruises to his body and groin. He was also diagnosed with failure to thrive because of malnourishment. E.J.'s injuries were so severe that he was transported from East Chicago for treatment, and doctors were unsure if he could survive without life support.

Even after surviving without life support equipment, E.J. required extensive inpatient rehabilitative care, and will require constant hands-on care for the rest of his life. At the time of the sentencing hearing, when he was four years old, E.J. had the gross motor skills of a seven month-old child, the fine motor skills of a ten month-old child, was only beginning to talk, and could not walk or sit up on his own. E.J. is expected to remain wheelchair-bound for the rest of his life, and at the time of Johnson's sentencing continued to suffer brain damage across 75% of his brain.

We turn now to Johnson's character. Johnson joined the U.S. Marine Corps after high school; four years later, the Corps dishonorably discharged her for marijuana use. Johnson's subsequent employment history has also been spotty, with only short stints of employment in 2004, 2005, and 2009. More favorably to her character, Johnson pled guilty, acknowledged her culpability, and expressed remorse for her conduct.

While her criminal history is limited, it is nevertheless violent. In 2008, Johnson pled guilty to and was convicted of Burglary and Armed Robbery in Georgia and was sentenced to an aggregate twenty-two years imprisonment, much of which was later suspended to probation. E.J. was born while Johnson was incarcerated. Once discharged to probation, Johnson was permitted to do so outside the State of Georgia. She was still serving probation at the time of the instant offenses.

Johnson now argues that her mental illness, which went undiagnosed prior to her jailing upon arrest in this case, makes her eighteen-year sentence inappropriate. We disagree. While we recognize that mental illness can result in erratic or violent behavior, Johnson's abuse of E.J. took place over the course of a day and resulted in severe and permanent harm to the child. Johnson failed to seek medical treatment for E.J. at any point during the day, even after E.J.'s head struck the coffee table, until the child's injuries were already severe. Further, there is no evidence in the record that establishes any connection between Johnson's conduct and her mental illness.

Taken together, we cannot conclude that Johnson's sentence is inappropriate in light of her offenses and her character.

Affirmed.

RILEY, J., and CRONE, J., concur.