**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Sep 17 2013, 5:36 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MATTHEW D. ANGLEMEYER**
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RICHARD C. WEBSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| SPIROS ALATORRE, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 49A04-1301-CR-28 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Carol J. Orbison, Judge
Cause No. 49G22-1208-MR-53985

**September 17, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

Spiros Alatorre was convicted for his role in the murder of an eighteen year old and now appeals his sentence for felony murder, Class A felony kidnapping, and Class B felony carjacking. He argues, and the State concedes, that his convictions for felony murder, Class A felony kidnapping, and Class B felony carjacking violate the prohibition against double jeopardy. He also argues that his sixty-year sentence, with ten years suspended, five years in a community corrections program, and forty-five years in the Department of Correction, is inappropriate in light of the nature of the offense and his character. We reverse and remand to the trial court with instructions to vacate Alatorre's Class A felony kidnapping and Class B felony carjacking convictions because they violate double-jeopardy principles. We also find that Alatorre's sentence is not inappropriate in light of the nature of the offense and his character.

**Facts and Procedural History**

The facts most favorable to the verdict follow. Raul Hernandez and Wilmer Cuevas made plans to go to a hookah bar on the night of October 22, 2010. Raul drove his 1999 Lincoln Town Car to L.S.'s house in Indianapolis.[1] Raul invited L.S. and Alatorre, who was with L.S., to join them at the hookah bar. On the way to the hookah bar, Raul picked up Wilmer, R.A. and U.S. The group could not go inside because some of the men were younger than eighteen. The group loitered in the parking lot and then drove to Raul's house, parking behind the house.

---

[1] L.S.'s age is not found in the record so we refer to him by his initials.

At L.S.'s house, everyone except Wilmer smoked marijuana. They started drinking, calling each other names, and engaging in horseplay. Raul bragged about how he was a gangster and kills people. He also said, "if you kill for me, I'll kill for you." Ex. 67, p. 150. Raul took Wilmer home around 1:00 a.m. and returned to L.S.'s house, parking by the garage. Shortly thereafter, Raul and R.A. fought and Raul was knocked to the ground. Raul attempted to stand up, but he could not. R.A. then stuffed Raul, who was still alive, into the trunk of Raul's car.

When the fight occurred between R.A. and Raul, Alatorre was alone in L.S.'s car rolling a marijuana cigarette. He noticed that Raul and R.A. began arguing and a fight broke out. Alatorre heard Raul fall to the ground and try to get up. After that, there was silence and everyone told Alatorre, "come on, come on, come on, let's go." Ex. 67, p. 154. Alatorre got in the front seat of Raul's car and R.A. began to drive. L.S. and U.S. were in the back seat. Alatorre claims he did not know where Raul was and thought they were stealing Raul's car.

R.A. drove the car to his mother's house near 71st Street and Georgetown Road. R.A. went inside his mother's house and returned to the car about fifteen minutes later. He then drove for three or four minutes before stopping in an alley. The men exited the car, and R.A. opened the trunk, revealing Raul lying inside the trunk. According to Alatorre, this was the first time he realized that Raul was in the trunk. Raul was badly beaten, but still alive.

R.A. shut the trunk and drove to an alley behind a house on the east side of Indianapolis and stopped. R.A., L.S., and U.S. exited the car. R.A. opened the trunk and

3

shot Raul three times. From inside the car, Alatorre heard two or three gunshots and saw the flash of the gun. R.A. told Alatorre to help move Raul's body. The men put the body next to some trash cans in the alley behind the house, and R.A. covered it with a lawn chair.

R.A. then drove the car to a gas station, and L.S. put gasoline into a Gatorade container. R.A. drove the car to a field and doused it with gasoline. He then lit a tissue box on fire and tossed it into the car, setting it ablaze. The men then walked approximately two blocks to J.A's house. Everyone stayed for the night, and J.A.'s mother drove the men to a Taco Bell on the west side in the morning. At approximately 10:00 a.m., a homeowner discovered Raul's body and called the police.

Forensic evidence showed that Raul had been shot twice in the head and once in the left hip. Two of the gunshot wounds were life-threatening, and one was lethal.

The State charged Alatorre with murder, felony murder,[2] Class A felony kidnapping, Class B felony carjacking, and Class B felony arson. Appellant's App. p. 34-36. At the conclusion of the trial, the jury did not reach a verdict on Alatorre's murder charge but found Alatorre guilty of felony murder, Class A felony kidnapping, and Class B felony carjacking. Appellant's App. p. 154-57; Tr. p. 331-32. The jury found Alatorre not guilty of Class B felony arson. Tr. p. 332.

---

[2] The charging information for the felony-murder charge provides:

> Spiros Alatorre and R.A. and/or L.S. and/or U.S. on or about October 23, 2010, did, while committing or attempting to commit the offense of Kidnapping, which is to knowingly confine another person while hijacking a vehicle and/or Carjacking, which is to knowingly take a motor vehicle, from the person or presence of another person by using or threatening the use of force on said other person or by putting said other person in fear, kill another human being, namely: Raul Hernandez Jr.;

Appellant's App. p. 34-35.

At sentencing, the trial court identified as a mitigator that Alatorre had no criminal history. The court specifically declined to find Alatorre's age of eighteen as a mitigator. *Id.* at 350. The court found as an aggravator the seriousness of the crime, stating that "the circumstances of this crime are horrendous and seriously aggravating." *Id.* at 351.

The trial court sentenced Alatorre to sixty years for felony murder, with ten years suspended and three years of probation. *Id.* For the executed portion, the court sentenced Alatorre to forty-five years at the Department of Correction and five years in Community Corrections. *Id.* The trial court also sentenced Alatorre to thirty years for Class A felony kidnapping and ten years for Class B felony carjacking, to be served concurrent with his felony-murder sentence. *Id.* The State dismissed the murder charge. Appellant's App. p. 187.

Alatorre now appeals.

## Discussion and Decision

Alatorre raises two issues on appeal. First, he contends that his convictions for felony murder, Class A felony kidnapping, and Class B felony carjacking violate the prohibition against double jeopardy. Second, he contends that his sixty-year sentence is inappropriate in light of the nature of the offense and his character.

## I. Double Jeopardy

Alatorre contends that his convictions for felony murder, Class A felony kidnapping, and Class B felony carjacking violate the prohibition against double jeopardy. The question of whether multiple convictions violate double jeopardy is reviewed de novo. *Sloan v. State*, 947 N.E.2d 917, 920 (Ind. 2011). This Court has

5

stated that, "[i]t is a violation of double jeopardy principles to convict and sentence a defendant for both felony murder and the underlying felony because the conviction for felony murder would necessarily require proof of the underlying felony." *Stewart v. State*, 945 N.E.2d 1277, 1285 (Ind. Ct. App. 2011), *trans. denied*.

Here, the conviction of felony murder with the convictions for Class A felony kidnapping and Class B felony carjacking violate double-jeopardy principles. The charging information for felony murder asserted that Alatorre murdered Raul in the process of committing "Kidnapping . . . and/or Carjacking . . . ." Appellant's App. p. 34-35. The wording of the charging information makes it impossible to determine which felony the jury relied upon, if not both, to find Alatorre guilty of felony murder. At trial, the State conceded that "since this is felony murder and we charged both kidnapping and carjacking as predicate offenses for that, the kidnapping and carjacking need to merge into the felony murder . . . ." Tr. p. 348.

When two convictions are found to contravene Indiana double-jeopardy principles, "we may eliminate the violation by vacating either conviction . . . ." *Owens v. State*, 742 N.E.2d 538, 545 (Ind. Ct. App. 2001), *trans. denied*. The State concedes again on appeal that Altorre's convictions for Class A felony kidnapping and Class B felony carjacking violate double jeopardy. We agree and therefore reverse and remand to the trial court with instructions to vacate the convictions for Class A felony kidnapping and Class B felony carjacking.

## II. Appropriateness of the Trial Court's Sentence

Alatorre also contends that his sixty-year sentence is inappropriate in light of the nature of the offense and his character.[3]

Although a trial court may have acted within its lawful discretion in imposing a sentence, Article 7, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of sentences through Indiana Appellate Rule 7(B), which provides that a court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Reid v. State*, 876 N.E.2d 1114, 1116 (Ind. 2007) (citing *Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007)). When assessing the nature of the offense and the character of the offender, we may look to any factors appearing in the record. *Stetler v. State*, 972 N.E.2d 404, 408 (Ind. Ct. App. 2012), *trans. denied*. The defendant has the burden of persuading us that his sentence is inappropriate. *Reid*, 876 N.E.2d at 1116 (citing *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006)).

The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest— the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Id.* Whether a sentence is

---

[3] In determining the appropriateness of Alatorre's sentence, we consider only his sixty-year felony-murder sentence because his convictions for Class A felony kidnapping and Class B felony carjacking are being vacated on double-jeopardy grounds.

inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case. *Id.* at 1224. In assessing whether a sentence is inappropriate, appellate courts may take into account whether a portion of the sentence is ordered suspended or is otherwise crafted using any of the variety of sentencing tools available to the trial judge. *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010). These tools include probation, home detention, placement in a community-corrections program, executed time in a DOC facility, concurrent rather than consecutive sentences, and restitution/fines. *Id.*

A person who commits murder shall be imprisoned for a term of between forty-five years and sixty-five years, with fifty-five years being the advisory term. Ind. Code § 35-50-2-3(a). Here, the trial court sentenced Alatorre to sixty years for felony murder, which is within the statutory range and five years above the advisory sentence. Yet, the trial court suspended ten years of the sentence and ordered five of the remaining years to be served in a community-corrections program.

The heinousness of Alatorre's crime merits the sentence. Raul was beaten and stuffed into a trunk as Alatorre, R.A., L.S., and U.S. drove across the city of Indianapolis. Once in the alley behind a house, Raul was shot three times in the trunk. Although Alatorre did not pull the trigger, he assisted in moving Raul's body and leaving it abandoned in an alley. Afterward, the men drove Raul's car to a field and set it on fire to destroy evidence. The trial court characterized the crime as both horrendous and brutal. Tr. p. 350. The court also pointed out that it was "not one single act but a series of acts

8

that were strung out . . . ." *Id.* Because of the seriousness of the crime, the trial court found that the circumstances were "seriously aggravating." *Id.* at 351.

We acknowledge that Alatorre had no criminal history before this and had support from family and friends at sentencing. But as the trial court explained, "[t]he crime that was committed and which resulted in the death of young Raul Hernandez would not reflect the description that has been given to me of you as a young person." *Id.* at 350.

Given the nature of this offense, the fact that the sentence was only five years above the advisory sentence, and the fact that only forty-five of those years will actually be served in the Department of Correction, Alatorre has failed to persuade us that his sixty-year sentence is inappropriate. We therefore affirm the trial court's sentence.

Reversed and remanded in part, and affirmed in part.

BAKER, J., and FRIEDLANDER, J., concur.