**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

May 30 2014, 10:26 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**KRISTINA J. JACOBUCCI**
Newby, Lewis, Kaminski & Jones, LLP
LaPorte, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES B. MARTIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

RAVEN MCGINTY,                          )
                                        )
    Appellant-Defendant,            )
                                        )
      vs.                         )          No. 46A05-1310-CR-500
                                        )
STATE OF INDIANA,                       )
                                        )
    Appellee-Plaintiff.             )

APPEAL FROM THE LAPORTE SUPERIOR COURT
The Honorable Kathleen B. Lang, Judge
Cause No. 46D01-1211-FA-549

**May 30, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**SHARPNACK, Senior Judge**

## STATEMENT OF THE CASE

Raven McGinty appeals his forty-five-year sentence for molesting his young son, niece, and nephew over a period of years. We affirm.

## ISSUES

McGinty raises two issues on appeal: (1) whether the trial court abused its discretion in sentencing him, and (2) whether his sentence is inappropriate.

## FACTS AND PROCEDURAL HISTORY

McGinty spent a lot of time with his niece C.M. and nephew J.M. He cared for them in the absence of their father, who was his brother.

In April 2000, when McGinty was twenty-three years old, he began molesting eight-year-old C.M. McGinty admitted he forced C.M. to perform oral sex on him in his bedroom between twenty to thirty times between April 2000 and September 2006. He said he ejaculated in her mouth each time and believed the young girl liked it. In addition to oral sex, he also had vaginal intercourse and attempted anal sex with C.M.

In January 2001, McGinty began molesting seven-year-old J.M. McGinty admitted he molested J.M. fifteen to twenty times between January 2001 and June 2006. He forced J.M. to perform oral sex and attempted anal sex with him.

J.M. would sometimes be in the room when McGinty forced C.M. to perform oral sex, and when C.M. would stop, McGinty forced J.M. to continue. McGinty admitted that at one point he forced C.M. to perform oral sex on J.M.

McGinty stopped molesting C.M. and J.M. when the children came forward with allegations. However, he denied any wrongdoing and was not prosecuted.

2

In May 2012, McGinty began molesting his own nine-year-old son M.M. McGinty did not have custody of M.M. Instead, M.M. had lived with his grandmother since he was eight months old. McGinty admitted he forced M.M. to perform oral sex.

The police began investigating McGinty when they found child pornography on his computer. During an interview, McGinty admitted he would typically search for pornography involving eight- to twelve-year-old children. He eventually admitted to molesting C.M., J.M., and M.M.

In November 2012, the State charged McGinty with three counts of Class A felony child molesting, three counts of Class B felony incest, and one count of Class B felony vicarious sexual gratification. He pleaded guilty to three counts of the lesser offense of Class B felony child molesting pursuant to a plea agreement that left sentencing to the discretion of the trial court. The State agreed to dismiss the remaining charges.

At the sentencing hearing, the State presented M.M.'s grandmother's testimony regarding how the molestations had affected him. M.M. was scared to be in his room at night, always checked before bed to make sure the windows and doors were "locked up tight so dad can't get him," and was afraid of shadows. Tr. p. 32. M.M.'s grandmother testified that "he doesn't know how to show love the way that you're supposed to, because this is what daddy showed him was love." *Id.* at 33. M.M. had "tried to kiss [his younger sisters] down there" and was not allowed alone with his sisters or any other children. *Id.* M.M. was in counseling to learn appropriate touches and to deal with the effects of McGinty's abuse. He was afraid of people, particularly men, and would not

spend the night with anyone. M.M.'s grandmother explained: "His whole mannerism he, he's clingy. He has to know where people are at all times to feel safe." *Id.* at 34.

M.M.'s grandmother testified he had "a lot of mixed emotions about his dad. He blames himself for what his dad's done, for everybody being sad about this and telling a secret." *Id.* at 32. "He loves his dad, but he don't like his dad and I've explained to him, you know, this was daddy's fault, this wasn't his fault." *Id.* at 34.

M.M.'s grandmother also recounted an incident occurring after M.M. had disclosed the abuse but before McGinty was arrested. At some point during that time, M.M. saw McGinty and "asked if he could see his dad. And since I was right there I told him he could go over there, right by the car and say hi to his dad. He wanted to give him a hug and a kiss. And he apologized to his dad for telling his secret. Raven didn't even tell him that it wasn't his fault. He wouldn't take ownership of it. Making that little boy think it was all his fault. And it wasn't his fault." *Id.* at 35.

The State expected C.M. and J.M. to testify as well, but they did not appear. The State read portions of J.M.'s deposition into the record, and the court took its admission under advisement.

C.M. and J.M. appeared at the hearing at which the court was to impose McGinty's sentence. J.M. testified: "Uh, what I want to say to the Court today is, me, [C.M.] and [M.M.] were all three sexually abused by Raven McGinty. He has ruined our lives very deeply, affecting us mentally and physically, and has scar[r]ed us for the rest of our lives." *Id.* at 97. C.M. testified: "I'm just glad I can finally put this behind me. And all the things that me and my brother had to experience when we were little is all just

4

going to stay right here.  It's going to have room -- have a great life knowing that my uncle is exactly where he needs to be or he's going to be.  So that's all I wanted to say." *Id.* at 98-99.

Before pronouncing the sentence, the trial court denied the admission of J.M.'s deposition.  The court found several aggravating and mitigating circumstances.  As aggravators, the court identified that: (1) the offenses were crimes of violence; (2) the harm to the victims was significant and long-term; (3) the victims were of a young age; (4) McGinty molested C.M. in the presence of J.M. and made the siblings engage in oral sex with each other; (5) he had care, control, or custody over the victims; and (6) the crimes were committed against three distinct victims over the course of many years.  As mitigators, the court identified that: (1) his guilty plea saved the time and expense of trial; (2) he was remorseful and attempted to commit suicide after the charges were filed; (3) he cooperated with the investigation; (4) he lacked any criminal history; (5) he was likely to respond to short-term incarceration; and (6) incarceration would be a hardship on his family, particularly his father, who had significant health problems.

The trial court imposed consecutive fifteen-year terms, for an aggregate sentence of forty-five years.  McGinty now appeals his sentence.

<u>DISCUSSION AND DECISION</u>

I. ABUSE OF DISCRETION

McGinty first contends the trial court abused its discretion in sentencing him.  Specifically, he argues the court should have given greater weight to the mitigators.  He

5

also argues his position of trust with M.M. and the impact of the crimes on all three children were improper aggravators.

Subject to the review and revision power discussed below, sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (2007).[1] An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* One way in which a trial court may abuse its discretion is by entering a sentencing statement that includes reasons that are unsupported by the record. *Id.*

Although the trial court identified several mitigators, McGinty argues the court "effectively gave little to no weight to them." Appellant's Br. p. 11. Given his sentence was well below the maximum term of sixty years, it is difficult to believe the court failed to attach proper weight to the mitigating circumstances. In any event, "[t]he relative weight or value assignable to reasons properly found or those which should have been found is not subject to review for abuse." *Anglemyer*, 868 N.E.2d at 491. McGinty's challenge to the relative weight of the mitigators is thus unavailable for appellate review.

McGinty acknowledges the record unequivocally establishes his position of trust with C.M. and J.M. He argues, however, that it does not reveal he had a position of trust with M.M. and instead establishes that M.M.'s grandmother had full guardianship of him

---

[1] Both parties rely on *Anglemyer* in setting forth our standard of review despite the fact that the crimes against C.M. and J.M. occurred before *Anglemyer* was issued. We thus do the same. We observe, however, that we would nevertheless affirm McGinty's sentence as to C.M. and J.M. under the pre-*Anglemyer* sentencing scheme.

and continuous care and custody of him since he was eight months old. Though M.M.'s grandmother is his guardian, it is undisputed that McGinty is his biological father. *See Hart v. State*, 829 N.E.2d 541, 544 (Ind. Ct. App. 2005) ("There is no greater position of trust than that of a parent to his own young child."). Moreover, it is reasonable to conclude from the record that McGinty was alone with M.M. during the molestations and that M.M. was thus entrusted to his care. The court did not abuse its discretion by identifying McGinty's position of trust with his victims as an aggravator.

McGinty also argues the record does not support the trial court's finding of victim impact as an aggravator. "Victim impact is an aggravating circumstance only if it is demonstrated that the crime had destructive impact not normally associated with the offense." *Id.* The extensive testimony of M.M.'s grandmother showed that McGinty's abuse severely affected M.M.'s emotional development and his relationships with other people. M.M. did not know how to express love. He was not permitted to be alone with his younger sisters or any other children after several instances in which he had tried to touch his younger sisters inappropriately. He was clingy and afraid of people, particularly men. He consistently checked to make sure the house was locked up before going to bed and had to know where people were at all times to feel safe. In light of this testimony, we cannot say the court abused its discretion by finding the impact of McGinty's abuse on M.M. to be an aggravating circumstance.

On the other hand, the State's evidence of victim impact as to C.M. and J.M. was not as strong. Although portions of J.M.'s deposition were read into the record at the sentencing hearing, the court ultimately excluded it from the evidence. Thus, the only

evidence of victim impact as to C.M. and J.M. came from their brief, generalized statements shortly before the court imposed McGinty's sentence. While we have no doubt that McGinty's abuse deeply and profoundly affected C.M. and J.M., the record simply does not reveal a destructive impact not normally associated with Class B felony child molesting. Nor does the State point to any.

Nonetheless, if a trial court abuses its discretion in sentencing, "remand for resentencing may be the appropriate remedy if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Anglemyer*, 868 N.E.2d at 491. Here, the trial court identified several other aggravators: (1) the offenses were crimes of violence; (2) the victims were of a young age; (3) McGinty molested C.M. in the presence of J.M. and made the siblings engage in oral sex with each other; (4) he had care, control, or custody over the victims; and (5) the crimes were committed against three distinct victims over the course of many years. We are thus confident the trial court would have imposed the same sentence had it not relied on victim impact as to C.M. and J.M. as aggravating. *See Trusley v. State*, 829 N.E.2d 923, 927 (Ind. 2005).

## II. INAPPROPRIATE SENTENCE

McGinty next contends his sentence is inappropriate. Although a trial court may have acted within its lawful discretion in imposing a sentence, Article 7, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of sentences through Indiana Appellate Rule 7(B), which provides that a court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the

8

Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Reid v. State*, 876 N.E.2d 1114, 1116 (Ind. 2007) (citing *Anglemyer*, 868 N.E.2d at 491). The defendant has the burden of persuading us that his sentence is inappropriate. *Id.* (citing *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006)).

We first look to the statutory range established for the class of the offenses. McGinty pleaded guilty to three Class B felonies. The statutory range for a Class B felony is between six and twenty years, with the advisory sentence being ten years. Ind. Code § 35-50-2-5 (2005). McGinty received consecutive fifteen-year terms, for an aggregate sentence of forty-five years.

We next look to the nature of the offenses and McGinty's character. As to the nature of the offenses, McGinty molested his eight-year-old niece and seven-year-old nephew, whom he cared for in the absence of their father, for over five years. He forced both young children to perform oral sex on him. He also attempted anal sex with both of them and had vaginal intercourse with C.M. They were sometimes made to endure the abuse in the presence of the other, and at one point C.M. was forced to perform oral sex on J.M. McGinty stopped abusing his niece and nephew only after they came forward with allegations. Undeterred, McGinty began molesting his own nine-year-old son some years later, forcing the young boy to perform oral sex on him. We note the trial court observed the case was "one of the most disturbing cases I've seen both as 20 years as a prosecutor and now 12 years as a Judge." Tr. p. 103. McGinty repeatedly perpetrated his abuse against two separate family members over a period of years. He then resumed his

9

abuse by sexually victimizing his own young son. The nature of the offenses alone justifies the sentence imposed by the trial court.

As to McGinty's character, he urges us to note his lack of a criminal history. While it is true that McGinty has no prior convictions, the three crimes for which he has been sentenced here involve molestations of three separate children spanning twelve years. By his own accounts, he engaged in oral sex with C.M. twenty to thirty times and with J.M. fifteen to twenty times. His own estimates, likely conservative, establish up to fifty separate criminal offenses just involving C.M. and J.M. In addition, when the police investigated him for possessing child pornography, he admitted he typically searched for pornography involving eight- to twelve-year-old children. The fact that he has no prior criminal convictions therefore holds little weight in our assessment of his sentence.

McGinty also points out his Indiana Risk Assessment System score of being at low risk to reoffend. But we view this evidence alongside the fact that he stopped molesting C.M. and J.M. only to begin molesting M.M. some years later. In addition, his own fiancée testified at the sentencing hearing that he was an "opportunistic offender" and that she would never leave her eight- and twelve-year-old children alone with McGinty "as much for his protection as theirs." *Id.* at 77, 79.

McGinty's character is also reflected in the interaction he had with his son M.M. after the abuse had been disclosed but before his arrest. When M.M. apologized for sharing their secret, McGinty did not say anything, allowing M.M. to believe he was at fault. In short, McGinty has failed to persuade us that his forty-five-year sentence is inappropriate.

10

<u>CONCLUSION</u>

We therefore affirm his sentence.

NAJAM, J., and MATHIAS, J., concur.