## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Andrew J. Sickmann
Richmond, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

J. T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Myron Stephen Davisson, *Appellant-Defendant,* | February 18, 2016 |
| | Court of Appeals Case No. 81A05-1505-CR-359 |
| v. | Appeal from the Union Circuit Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable Matthew R. Cox, Judge |
| | Trial Court Cause No. 81C01-1503-FA-45 |

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Defendant, Myron Stephen Davisson (Davisson), appeals his conviction for Count I, child molesting, a Class C felony; Count II, sexual misconduct with a minor, a Class D felony; Count III, child molesting, a Class A felony; Count IV, rape, a Class B felony; Count V, sexual misconduct with a minor, a Class B felony; and Count VI, sexual misconduct with a minor, a Class C felony.

We affirm.

## ISSUES

Davisson raises two issues on appeal, which we restate as follows:

(1) Whether Davisson's confession was voluntary when police made references to his religion; and

(2) Whether Davisson's sentence was inappropriate in light of the nature of the offense and his character.

## FACTS AND PROCEDURAL HISTORY

On February 23, 2014, after receiving a phone call from another detective, Detective Andrew Wandersee (Detective Wandersee) of the Indiana State Police drove to a church in Liberty, Indiana to speak to fourteen-year-old E.C. and investigate her claim that her step-father, Davisson, had molested her. Detective Wandersee interviewed E.C. and then went to Davisson's home to talk to Davisson and E.C.'s mother. Davisson denied the allegations; however, he agreed to take a polygraph test which was scheduled for February 27, 2014

at the Wayne County Sheriff's Department. Davisson arrived in his own vehicle at approximately 1:00 p.m. and met with Detective Wandersee and Detective Todd Barker (Detective Barker), who administered the polygraph test. Davisson proceeded to an interview room, which stayed unlocked during the interview. The interview lasted for approximately three hours. Detective Barker advised Davisson of his *Miranda* rights and gave him a copy of the waiver form to read along before starting the interview. Davisson signed the waiver and agreed to proceed. He stated he understood his rights and at no time requested an attorney. Davisson was questioned by one detective at a time.

[5] Upon advising Davisson of the results of the polygraph test, the officers continued to question him and made several references to his religion urging him to tell the truth. As the interview progressed, Davisson first admitted to entering E.C.'s room, then to fantasizing about having sex with E.C., then to touching her on her thigh, and finally to touching her on her vagina two or three times. At that point, Davisson was placed under arrest.

[6] Davisson was originally charged with two Counts; however, on February 12, 2015, the State filed an amended Information ultimately charging Davisson with the following offenses: Count I, child molesting, a Class C felony; Count II, sexual misconduct with a minor, a Class D felony; Count III, child molesting, a Class A felony; Count IV, rape, a Class B felony; Count V, sexual

misconduct with a minor, a Class B felony; and Count VI, sexual misconduct with a minor, a Class C felony.[1]

[7] On April 1, 2015, Davisson filed a Motion to Suppress Statements. In his motion, Davisson asserted that his statements to law enforcement on February 27, 2014, were made involuntarily in violation of his rights under the Fifth Amendment to the United States Constitution. On April 10, 2015, the trial court held a hearing, and on April 13, 2015, the trial court issued an order denying Davisson's suppression motion.

[8] On April 14, 2015, the trial court conducted a jury trial. At the close of the evidence, the jury returned a guilty verdict on all six Counts. On April 27, 2015, the trial court held a sentencing hearing and sentenced Davisson to an aggregate sentence of sixty-one years to be served at the Department of Correction.

[9] Davisson now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Admissibility of Confession*

[10] Davisson argues that the trial court erred by admitting into evidence his confession given during his interview with the police because he made it

---

[1] On March 9, 2015, as a result of the State filing an amended Information, the trial court ordered the assignment of a new cause number "with a FA designator." (Appellant's App. p. 79). Accordingly, the clerk assigned Cause Number 81C01-1503-FA-000045 to the case.

involuntarily. If a defendant challenges the voluntariness of a confession under the United States Constitution, the State must prove the statement was voluntarily given by a preponderance of the evidence. *Malloch v. State*, 980 N.E.2d 887, 901 (Ind. Ct. App. 2012) (citing *Pruitt v. State*, 834 N.E.2d 90, 114 (Ind. 2005)). The Indiana Constitution, however, requires the State to prove beyond a reasonable doubt that the defendant voluntarily waived his rights and that the confession was voluntarily given. *Id*.

[11] When evaluating a claim that a statement was not given voluntarily, the trial court is to consider the totality of the circumstances, including whether there is police coercion, the length, location, and continuity of the interrogation, and the maturity, education, physical condition, and mental health of the defendant. *Id*. On appeal, we do not reweigh the evidence but instead examine the record for substantial, probative evidence of voluntariness. *Id*. We examine the evidence most favorable to the State, together with the reasonable inferences that can be drawn therefrom. *Id*. If there is substantial evidence to support the trial court's conclusion, it will not be set aside. *Id*.

[12] Davisson mainly argues that his confession was the result of a manipulation technique used by the officers when they made references to his religion. He asserts that such improper influence is prohibited in Indiana. [2]

---

[2] Although central to his appeal, Davisson makes this argument without citations to any authorities or statutes. *See* Ind. Appellate Rule 46(A)(8)(a).

[13] Indeed, a confession is voluntary if it is the product of a rational intellect and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will. *Id*. at 902. The critical inquiry is whether the defendant's statements were induced by violence, threats, promises, or other improper influence. *Id*. While deceptive police interrogation tactics weigh heavily against the voluntariness of a confession, they do not automatically render a confession inadmissible. *Id*. Rather, they must be considered in light of the totality of the circumstances. *Id*.

[14] In *Malloch*, the defendant was accused of molesting his step-daughter. *Id*. at 893. He agreed to go to the Sheriff's Department for a formal interview and drove himself there. *Id*. Prior to the interview, the defendant was read his *Miranda* rights; he indicated that he understood them, had no questions about them, and wished to talk. *Id*. During the interview, the officers applied an interrogation technique, introducing "different minimizing themes," in essence excuses or justifications, to make it easier and more comfortable for the suspect to admit to the crime. *Id*. Malloch then admitted to molesting the child and was arrested. *Id*. at 896.

[15] Malloch claimed that his will was overborne by police interrogation tactics. *Id*. at 902. He maintained that the detective conducting the interview was confrontational, intense, and deceptive. *Id*. During the interview, the detective asserted forty-nine times that the defendant was awake and consciously touched the child. *Id*. The detective urged the defendant to tell the truth; he frequently challenged the defendant's manhood in light of his failure to take responsibility.

*Id.* The detective even asserted, repeatedly and falsely, that his investigation clearly established the defendant intentionally touched the victim. *Id.* at 903. After examining each of the detective's statements, this court did not find them to be improper enough to render the confession involuntary. *Id.*

[16] Here, the officers employed a similar technique. They started with different minimizing themes promising Davisson help and counseling. When their initial appeals to tell the truth did not work, they made references to Davisson's religion urging him to confess to receive forgiveness. The officers wanted Davisson to get "over the hump of being honest." (Transcript p. 416).

[17] We have carefully reviewed the record and the video recording of Davisson's interview with the officers on February 27, 2014 and we fail to find any intimidation, coercion, threats, deception, or even confrontation that could have broken Davisson's free will. *See, e.g., State v. Loosli*, 941 P.2d 1299, 1301 (Idaho 1997) (the defendant's confession of molesting a child was given voluntarily despite the police officers' references to God and assertions that God would not forgive the defendant if he did not tell the truth).

[18] Furthermore, the references to religion in this case is only one of several factors. Similar to our analysis in *Malloch*, where the alleged deceptive interrogation technique was only one of the factors, we have to review other circumstances as well. *See Malloch*, 980 N.E.2d at 903. In considering the totality of the circumstances, we note that Davisson was fifty-seven years old at the time of the interview, had a master's degree in education and a job as a science teacher.

Davisson drove himself to the interview. He was free to leave or terminate the interview at his will; he even paused the interview to leave once. Before the interview, he was read his *Miranda* rights; he indicated that he understood and waived them. During the interview, the officers did not yell at nor threaten Davisson, who even attempted to make jokes at different points. As such, we conclude that there is substantial evidence to support the trial court's decision that Davisson's statement was voluntary under federal and state standards of review.

## II. *Appropriateness of Sentence*

[19] Davisson also claims that his aggregate sixty-one year sentence is inappropriate in light of the offense and his character. It is long settled "that sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). Despite the fact that the trial court imposed a sentence that is authorized by statute, our court may revise the sentence if, "after due consideration of the trial court's decision, [we] find[] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Appellate Rule 7(B).

[20] With respect to Appellate Rule 7(B), "[t]he principal role of appellate review should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell*, 895 N.E.2d at 1225. Ultimately, "whether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the

severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Id.* at 1224. In making this determination, we focus on the length of the aggregate sentence and the manner in which it is to be served. *Id.* The defendant bears the burden of proving that his sentence is inappropriate. *Reid v. State,* 876 N.E.2d 1114, 1116 (Ind. 2007).

[21] With respect to the nature of the crime, our supreme court has previously stated that "crimes against children are particularly contemptible." *Walker v. State*, 747 N.E.2d 536, 538 (Ind. 2001). Davisson was a father figure and he held a position of trust within his household. Nonetheless, he repeatedly molested E.C. over a period of one year, visiting her in the middle of the night to avoid being discovered by other family members or fondling with her while others were not around. Davisson methodically, in a grooming fashion, escalated his actions from innocent backrubs, to touching the child's buttocks, to touching her vagina, and to eventually raping her. He even told E.C. not to tell others what he had done to her.

[22] Turning to Davisson's character, Davisson notes that he has no criminal history and that the trial court failed to properly consider this fact. However, his lack of criminal convictions is offset by his repeated molestations of E.C. over a lengthy period of time and his lack of remorse. Indeed, after his confession to the police officers, his arrest, and commencement of the legal proceedings, Davisson started denying his responsibility and blaming the fourteen-year-old victim instead. Accordingly, we conclude that the sentencing court's decision is not inappropriate.

# CONCLUSION

Based on the foregoing, we hold that there was substantial evidence to support the trial court's finding that Davisson's confession was voluntary and that his sentence was not inappropriate in light of the nature of the offense and his character.

Affirmed.

Najam, J. and May, J. concur