# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 29 2018, 6:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ronald K. Smith
Public Defender
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Robert Williams Jr., <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | June 29, 2018 <br><br> Court of Appeals Case No. 18A02-1712-CR-2950 <br><br> Appeal from the Delaware Circuit Court <br><br> The Honorable Marianne L. Vorhees, Judge <br><br> Trial Court Cause No. 18C01-1702-F3-5 |

**Vaidik, Chief Judge.**

# Case Summary

[1] Robert Williams Jr. appeals his conviction and sentence for aggravated battery. He argues that the trial court erred when it gave the jury an additional instruction after deliberations had started and that it relied on an improper aggravator in sentencing him. Finding no error, we affirm.

# Facts and Procedural History[1]

[2] In February 2017, Karen Bryant went to visit her friend Delisa Fox at Fox's house in Muncie. When Bryant arrived, she was met by Williams, her ex-boyfriend, who was also at the house. At some point during the evening Fox left, but Williams and Bryant remained at the house.

[3] Soon thereafter, Bryant and Williams got into an argument. Williams grabbed Bryant, but Bryant was able to get free. She grabbed her phone to call for help. Before she could make a call, Williams knocked the phone out of her hand and punched her in the left eye. Bryant immediately began bleeding from her left eye and was unable to see anything out of it. She struggled to find her phone and glasses but eventually located them and fled the house.

---

[1] There are several deficiencies with Williams's appendix, most notably that he filed a third volume which included materials that we already had—the transcript and exhibits. *See* Ind. Appellate Rule 50(F) ("Because the Transcript is transmitted to the Court of Appeals pursuant to Rule 12(B), parties should not reproduce any portion of the Transcript in the Appendix."). We recommend that Williams's appellate attorney re-read Appellate Rules 49-51, which govern the filing, contents, and assembly of the appendix.

[4] Bryant was able to get in touch with family members, who immediately took her to the hospital. Hospital staff, after learning how Bryant sustained her injury, called the Muncie Police Department. Officers came to the hospital, took Bryant's statement, and photographed her injuries. *See* Exs. 1-5. Bryant's doctor stated that her eye injury was "very severe" and classified it as a "blunt trauma to the left eye." Tr. Vol. II pp. 83, 85. "[T]here was a full thickness laceration extending 18 millimeters superior and circumlinear [sic] to the limbus and continuing 8 millimeters posteriorly from the medial limbus[.]" *Id.* at 84. In other words, Bryant's injury was a cut to her eye "just above the clear part of the eye that extended all the way around to the nasal portion and then all the way back to near the optic nerve." *Id.* The doctor confirmed that the injury was consistent with being punched. Bryant received multiple stiches to treat the cut, but because it was so deep, the doctor was unable to close the wound completely. Bryant continued to have persistent pain in her left eye, lost vision in the eye, had to have the eye removed, and was given a prosthetic eye.

[5] The day after Bryant was injured, Williams was arrested and charged with aggravated battery, a Level 3 felony.[2] According to the charging information, the State alleged that Williams knowingly inflicted an injury on Bryant that

---

[2] The State also charged Williams with domestic battery, a Class A misdemeanor; domestic battery resulting in serious bodily injury, a Level 5 felony; strangulation, a Level 6 felony; and interference with the reporting of a crime, a Class A misdemeanor. These counts, however, are not at issue in this appeal. The State dismissed the interference charge; the jury found Williams not guilty of the strangulation charge but guilty of the domestic-battery charges. At sentencing, the domestic-battery convictions were vacated because they were based on the same evidence as the aggravated-battery conviction.

"caused serious permanent disfigurement and/or protracted loss or impairment of the function of a bodily member or organ." Appellant's App. Vol. II p. 6; Ind. Code § 35-42-2-1.5(2). A jury trial was held in October 2017. At trial, Williams disputed Bryant's claim that he caused her eye injury by punching her. Although Williams could not definitively state whether he punched Bryant, he testified that she injured her eye when she hit the corner of a table.

[6] Before the case was submitted to the jury, the trial court read final instructions, including what constitutes aggravated battery. During deliberations, the jury submitted a question to the court: "Can we get a better definition of the term 'inflicted injury?'" Tr. Vol. II p. 139. The court suggested the following response:

> In order to establish that Defendant committed the crime of aggravated battery, the State had to show the Defendant knowingly inflicted an injury creating a protracted loss or impairment of the a [sic] bodily member or organ. I have already given you an instruction on the definition of knowingly. A person engages in conduct knowingly if when he engages in the conduct he is aware of a high probability that he is doing so. Knowledge is a mental function. It must be determined from considering the Defendant's conduct and the natural and usual consequences of the conduct. You may examine the surrounding circumstances, the Defendant's conduct, and the natural consequences of what might be expected from that conduct and you may reasonable inferences based upon (sic) - and you may draw reasonable inferences from - oh, that's bad grammar there. You may - the last paragraph is: The State must have proven beyond a reasonable doubt that the Defendant was aware of a high probability that his actions would inflict injury upon Karen Bryant.

*Id.* at 136-37. Williams objected to answering the question at all and, in the alternative, the language of the court's proposed answer. The court overruled his objections and gave its proposed response to the jury. The jury found Williams guilty, and the court entered judgment of conviction.

[7] At the sentencing hearing, the trial court identified multiple aggravating and mitigating circumstances, concluded that the aggravators outweighed the mitigators, and sentenced Williams to an above-advisory term of twelve years, all executed at the Department of Correction (DOC).

[8] Williams now appeals.

# Discussion and Decision

[9] Williams contends that the trial court erred in responding to the jury's question and that it relied on an improper aggravating circumstance when it sentenced him.

# I. Jury Instruction

[10] Williams argues that the trial court erred when it issued an additional jury instruction after jury deliberations had begun. Williams contends that our Supreme Court's decision in *Crowdus v. State*, 431 N.E.2d 796 (Ind. 1982), precludes a trial court from being able to issue additional jury instructions once deliberations have commenced. As Williams notes in his brief, the Court there explained:

Once deliberations commence, the trial court should not give any additional instructions. This rule precludes the trial court from giving any special emphasis, inadvertent or otherwise, to a particular issue in the case, and thus avoids the possibility that the additional instruction(s) may tell the jury what it ought to do concerning that issue.

*Id.* at 798. More recently, however, our Supreme Court has applied Indiana Code section 34-36-1-6 to criminal cases; the statute provides that after a jury retires for deliberation and "desires to be informed as to any point of law arising in the case . . . the information required **shall** be given[.]" (emphasis added); *see Ronco v. State*, 862 N.E.2d 257, 260 (Ind. 2007) (holding that the trial court "**must** respond to a jury question regarding a point of law involved in the case, whereas other questions should prompt caution lest the judge exercise undue influence." (Emphasis added)). It is undisputed that the jury raised a question of law involved in the case—a definition of the term "inflicted injury." Accordingly, the trial court was required to respond.

[11] In the alternative, Williams makes a one-sentence argument, without citation to the record or any legal authority, that "the language of the instruction presumed that Williams inflicted the blow upon the complaining witness which had caused her injury and that the only issue was whether it was done knowingly." Appellant's Br. p. 9. We disagree. In its answer, the trial court reiterated, "[T]he State had to show the Defendant knowingly inflicted an injury creating a protracted loss or impairment of the a [sic] bodily member or organ." Tr. Vol. II p. 136. In other words, the trial court explained that the State must prove

each element of the crime. Its answer did not presume that any element of the crime had been definitively proven, including that Williams inflicted Bryant's injury.[3]

# II. Sentencing

[12] Williams also argues that the trial court erroneously used an element of the crime—Bryant's injury—as an aggravator when it sentenced him to an above-advisory term. A Level 3 felony, which Williams was convicted of, has a sentencing range of three to sixteen years, with an advisory sentence of nine years. Ind. Code § 35-50-2-5. Bryant was sentenced to twelve years, all executed at the DOC. "Where a trial court's reason for imposing a sentence greater than the advisory sentence includes material elements of the offense, absent something unique about the circumstances that would justify deviating from the advisory sentence, that reason is 'improper as a matter of law.'" *Gomillia v. State*, 13 N.E.3d 846, 852-53 (Ind. 2014). However, trial courts are permitted to use the nature and circumstances surrounding the crime as an

---

[3] It is unclear from Williams's brief if he argues that the trial court erred by not re-reading all of the original jury instructions when it gave its supplemental instruction. He cites to multiple cases that discuss re-reading of instructions, but he never uses the word "re-read" in his brief. To the extent that he meant to argue this issue, the Indiana Jury Rules went into effect in 2003 and gave trial courts "greater leeway to facilitate and assist jurors in the deliberative process, in order to avoid mistrials." *Ronco*, 862 N.E.2d at 259. Jury Rule 28 provides that if the jury has reached an impasse, the trial court, while in the presence of counsel, may inquire how the court and counsel can assist the jury in its deliberations. The court is then permitted to direct that further proceedings occur as appropriate. This rule is similar to jury rules in other states, which stand for the proposition that failure to re-read all of the jury instructions "does not unduly invade the sanctity of jury deliberations or transform the trial judge to the status of fact finder." *Id.* (quoting Am. Bar Ass'n, *Principles for Juries & Jury Trials* 122 (2005)). Therefore, the trial court did not err when it did not simply re-read all of the original jury instructions in response to the jury's question.

aggravating factor. *Id.* ("Generally, the nature and circumstances of a crime is a proper aggravating circumstance.").

[13] During Williams's sentencing hearing, the trial court mentioned Bryant's severe injury, but only in the context of discussing the nature and circumstances of the case:

> The nature of the offense calls for an enhanced sentence. A sentence below the advisory would depreciate the crime's serious nature and it would depreciate the impact the crimes have had on the victim and her family.
>
> Defendant - so and I do find that the injury – you know, it's an aggravated battery case, so I really can't use that - you know, the fact - because that's what aggravated battery is, is the loss of an organ. So I'm not enhancing the sentence because of that. But it was a serious injury.
>
> Defendant struck the victim and then left her behind and the victim had to find help on her own. And I found that part of the trial rather striking as well, that, you know, again if the Defendant had stayed and helped the victim, perhaps a lot of this would not have happened.

Tr. Vol. II p. 167. The trial court's statement was nothing more than a commentary on the nature and circumstances surrounding Bryant's injury. The court took into consideration that Williams did not aid Bryant after he punched her and her eye began to bleed, causing a prolonged delay in her getting medical attention. The trial court did not rely on the fact that Williams injured

Bryant when it ordered him to serve an above-advisory sentence.  Accordingly, the trial court did not use an improper aggravator when it sentenced Williams.[4]

[14]    Affirmed.


Pyle, J., and Barnes, Sr. J., concur.

---

[4] To the extent that Williams believes his sentence is inappropriate and should be revised under Appellate Rule 7(B), he has waived this issue by failing to support it with cogent reasoning.  Ind. Appellate Rule 46(A)(8)(a) ("The argument must contain the contentions of the appellant on the issues presented, supported by cogent reasoning.").  Williams's entire argument is one-sentence long: "Williams further submits that the trial court sentence was inappropriate in light of *Cardw[e]ll v. State*, 895 N.E.2d 1219 (Ind. 2008), and *Reid v. State*, 876 N.E.2d 1114 (Ind. 2007)." Appellant's Br. pp. 10-11.