## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 25 2016, 5:57 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Michael J. Kyle
Baldwin Kyle & Kamish
Franklin, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Derrick Michael Means, *Appellant-Defendant,* v. State of Indiana, *Appellee-Plaintiff* | February 25, 2016 |
| | Court of Appeals Case No. 41A04-1502-CR-68 |
| | Appeal from the Johnson Circuit Court |
| | The Honorable K. Mark Loyd, Judge |
| | Trial Court Cause No. 41C01-1312-FC-113 |

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Defendant, Derrick M. Means (Means), appeals his sentence after pleading guilty to two Counts of operating a motor vehicle while intoxicated causing serious bodily injury, Class C felonies, Ind. Code § 9-30-5-4(a)(3) (2013).

We affirm.

## ISSUES

Means raises three issues on appeal, which we restate as follows:

(1)     Whether Means waived his right to challenge his convictions on double jeopardy grounds following a guilty plea;

(2)     Whether the trial court abused its discretion during sentencing by relying on the fact Means fled from the police; and

(3)     Whether Means' sentence was inappropriate in light of the nature of his offenses and his character.

## FACTS AND PROCEDURAL HISTORY

On November 27, 2013, while fleeing from the police in Johnson County, a heavily intoxicated Means rammed his SUV into a vehicle occupied by two adults and their six-year-old son.  The driver of the vehicle sustained a traumatic brain injury.  He fractured his skull, part of which had to be removed due to brain swelling, and he remained in a coma for two to three weeks

following the accident. The front passenger suffered a double concussion, a fractured knee cap, multiple lacerations, and internal bleeding. The child, who was in the back seat, sustained only bumps and bruises; however, immediately after the crash, he experienced immense shock because he believed his parents were dead. At the time of the accident, Means was on probation for an unrelated conviction of public intoxication. He also had one prior 2009 conviction for operating a motor vehicle while intoxicated in Indiana and one prior 2009 conviction for driving under influence in California.

[5]     On December 16, 2013, the State filed an Information charging Means with: Counts I and II, causing serious bodily injury when operating a motor vehicle while intoxicated with a previous conviction of operating a motor vehicle while intoxicated within the past five years, both Class C felonies; Counts III and IV, resisting law enforcement, both Class C felonies; and Count V, operating a motor vehicle while intoxicated with a previous conviction of operating a motor vehicle while intoxicated within the past five year, a Class D felony.

[6]     On November 13, 2014, Means pled guilty to Counts I and II in exchange for a maximum executed sentence cap of six years on each Count, merger of Count V with Counts I and II, and dismissal of Counts III and IV. On January 26, 2015, the trial court held a sentencing hearing and, on January 28, 2015, sentenced Means to an aggregate term of sixteen years, with twelve years executed at the Department of Correction and four years suspended to probation.

[7] Means now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

[8] Means first argues that his convictions for operating a vehicle while intoxicated causing serious bodily injury violate Indiana's double jeopardy laws. The State contends that Means waived his right to challenge his convictions on double jeopardy grounds because he entered into a plea agreement. We agree with the State. Our review of the record reveals that Means was represented by counsel, who discussed the plea agreement with Means several times and explained all pertinent consequences. He understood the terms and then freely and voluntarily signed the plea agreement. Moreover, Means received substantial benefits from the deal—dismissal of several charges and a cap on his executed sentence. As such, Means waived his right to challenge his convictions on double jeopardy grounds. *See Mapp v. State*, 770 N.E.2d 332, 334 (Ind. 2002).

[9] Notwithstanding the waiver, Means fails to persuade us on the merits of his double jeopardy claim as well. Means pled guilty to two offenses under Indiana Code Section 9-30-5-4. The offenses at the time of the accident were defined as:

> (a) A person who causes serious bodily injury to another person when operating a vehicle:
>
>> (1) with an alcohol concentration equivalent to at least eight-hundredths (0.08) gram of alcohol per:
>>
>>> (A) one hundred (100) milliliters of the person's blood; or
>>> (B) two hundred ten (210) liters of the person's breath;

(2) with a controlled substance listed in schedule I or II of [I.C. §] 35-48-2 or its metabolite in the person's body; or

(3) while intoxicated;

commits a Class D felony. However, the offense is a Class C felony if the person has a previous conviction of operating while intoxicated within the five (5) years preceding the commission of the offense.

(b) A person who violates subsection (a) commits a separate offense for each person whose serious bodily injury is caused by the violation of subsection (a).

I.C. § 9-30-5-4.

[10] The statute's language is unambiguous. The offense is elevated from a Class D to a Class C felony, if the offender has a prior similar conviction. Further, the offender is charged for each victim separately.

[11] Means acknowledges the statute's specific requirement to charge separate offenses for each victim. Instead, he claims he was subject to double jeopardy because each of his convictions was elevated from a Class D to a Class C felony based on his 2009 conviction of operating a vehicle while intoxicated and one conviction "cannot be the basis of multiple enhancements . . . even when there are multiple victims." (Appellant's Br. p. 6).

[12] However, at the time of the accident, Means had two prior convictions of operating a vehicle while intoxicated within the previous five years—one in

Indiana and one in California.[1]  Therefore, Means' argument is misplaced. Because there were two prior similar convictions, the elevation of both offenses from Class D felonies to Class C felonies does not raise double jeopardy concerns.

[13]  Means further contends that the trial court abused its discretion when, during sentencing, it relied on Means' flight from the police because it was not supported by evidence.  We disagree.  Sentencing decisions are reviewed for an abuse of discretion.  *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007).  A trial court abuses its discretion in sentencing when it fails to issue an adequate sentencing statement, finds aggravating or mitigating factors not supported by the record, omits factors that are clearly supported by the record, or finds factors that are improper as a matter of law.  *Id*. at 490-91.  An abuse of discretion occurs when a decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom.  *Id*. at 490.

[14]  Here, the trial court's decision is adequately supported by the record and the video recording of the crash.  Means admitted in open court that he was stopped by a police officer, fled the scene, and then, while being chased by the

---

[1] Means admitted that he had a DUI in California at his sentencing hearing.  A log showing an entry of conviction for DUI and hit and run on August 3, 2009 in California was admitted into evidence without objection as State's Exhibit 6.

police, hit the vehicle occupied by adults and their child. As such, we hold that the trial court did not abuse its discretion under the circumstances.

[15] Means finally claims that his aggregate executed sentence of twelve years is inappropriate in light of the offense and his character. It is long settled "that sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). Despite the fact that the trial court imposed a sentence that is authorized by statute, our court may revise the sentence if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender. Appellate Rule 7(B).

[16] With respect to Appellate Rule 7(B), "[t]he principal role of appellate review should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell,* 895 N.E.2d at 1225. Ultimately, "whether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Id.* at 1224. In making this determination, we focus on the length of the aggregate sentence and the manner in which it is to be served. *Id.* The defendant bears the burden of proving that his sentence is inappropriate. *Reid v. State,* 876 N.E.2d 1114, 1116 (Ind. 2007).

[17] As to the nature of the offenses, we note that Means drove his SUV with a blood alcohol content of 0.24. Means was stopped by the police, but fled. He was so intoxicated that he lacks any recollection of crashing into another vehicle and causing severe injuries to the victims. The harm that Means caused is incalculable; it completely changed the course of the victims' lives. The driver's injuries were so severe that his heart stopped twice. His doctors believed he was going to die and had begun preparing his family for his death. The driver lost all sight in his right eye. He had to have part of his skull removed because of swelling in his brain and now has a plate and screws holding his skull together. The passenger endured a double concussion, a fractured knee, internal bleeding, and lacerations. She floated in and out of consciousness for seventy-two hours following the accident and remained in the hospital for approximately a week. Furthermore, their six-year-old son not only experienced the accident, but witnessed his parents in such a severe condition that he believed them to be dead, and as a result, undergoes counseling approximately twice a month. Means' bad judgment on the evening of the crash caused devastating and lasting consequences to this family on many levels: physically, emotionally, and financially.

[18] Turning to Means' character, we note that Means had multiple prior convictions for operating a vehicle while intoxicated, public intoxication, and resisting law enforcement, as well as probation violations. This certainly demonstrates Means' disregard for the law and willingness to risk his own safety and the safety of others to avoid the consequences of his own decisions.

He was provided with opportunities for treatment and rehabilitation, but failed to take advantage of them. Means was well aware of his severe drinking problem and yet he continued driving his vehicle; he was uninsured at the time of the accident and for more than a year before that. Means' unchanged behavior and the serious nature of the present offenses justify the trial court's sentencing decision. As such, we conclude that the trial court's sentence was not inappropriate.

## CONCLUSION

[19] Based on the foregoing, we hold that Means waived his right to appeal his convictions on double jeopardy grounds, the trial court did not abuse its discretion during sentencing by relying on the fact Means fled from the police, and his sentence was not inappropriate.

[20] Affirmed.

[21] Najam, J. and May, J. concur